John N. BASIC, Sr., Plaintiff,

v.

FITZROY ENGINEERING,
LTD., Defendant.

No. 96 C 1650.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 6, 1996.

---

Steven Ackerman, Chicago, IL, for plaintiff.

Marie Louise Nienhuis, Christopher J. Graham, Peterson & Ross, Chicago, IL, for defendant.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is Defendant's motion to dismiss Plaintiff's Complaint for Declaratory Judgment. For the following reasons, the motion is granted.

## I.[1]

Plaintiff John N. Basic, Sr. ("Basic") is an Illinois resident. Defendant Fitzroy Engineering, Ltd. ("Fitzroy") is a foreign company incorporated in New Zealand. In his Complaint, Basic requests that this court make a variety of declarations, all of which will be discussed below.

Fitzroy, a construction and engineering company, entered into a construction contract with Auckland (New Zealand) International Airport to construct a "quarantine waste incinerator." Fitzroy then negotiated and contracted with Basic's company, known on the date of the contract as Basic Environmental Engineering, Inc. ("BEE") (now known as Flame Engineering, Inc.), to design, manufacture, and supervise the installation of a single incinerator unit.

However, a dispute arose between BEE and Fitzroy. Fitzroy claimed that BEE failed properly to perform portions of the parties' contract. Pursuant to the original contract between them, BEE and Fitzroy entered into an arbitration agreement. The arbitrator, bound by New Zealand civil procedure rules, entered a default order against BEE because of BEE's failure to appear at the arbitration hearing. The arbitrator entered an award in the amount of N.Z. $2,057,-296.08 against BEE. United States District Judge Ann Claire Williams confirmed the arbitration award, pursuant to her authority under 9 U.S.C. § 207, in *Fitzroy Eng'g Ltd. v. Flame Eng'g, Inc. f/k/a Basic Envtl. Eng'g, Inc.*, No. 94 C 2029, 1994 WL 700173 (N.D.Ill.Dec.4, 1994). The confirmed amount equates to an amount in excess of U.S. $1,345,362.

In October of last year, Fitzroy filed a lawsuit in a New Zealand court against Basic ("NZ action"). Though the Statement of Claim (known in the U.S. as a complaint) alleges that Basic transferred the assets of BEE to another company so that he could defeat enforcement of the judgment entered by both the arbitrator and Judge Williams, the document makes clear that Fitzroy's claim does not rest on the illegal transfer.

Rather, Fitzroy bases the NZ action on the negligent misrepresentations made to Fitzroy which induced Fitzroy to enter into the contract with Basic and BEE.

On January 26, 1996, Basic entered an "Appearance Under Protest of Jurisdiction" in the NZ action. In the protest, Basic argued that the New Zealand court lacked personal jurisdiction over him. Alternatively, Basic contended that Fitzroy's action should have been dismissed based on the *forum non conveniens* doctrine. Three days after Basic entered the "Appearance Under Protest," Fitzroy moved to strike it. On March 20, 1996, the High Court of New Zealand entertained argument concerning both the jurisdiction and *forum non conveniens* issues.

On March 22, 1996, Basic filed the instant Complaint. Basic requests that this court enter an order making six declarations. Among the sought-after declarations are: (1) that, because of issue and claim preclusion doctrines, the confirmed arbitration award against Basic and BEE/Flame Engineering, Inc. bars Fitzroy from filing the NZ lawsuit; (2) that New Zealand lacks personal jurisdiction over Basic; (3) that Illinois law provides no liability for negligent misstatements of facts by corporate officers; (4) that Fitzroy should have raised the alleged misstatements during the arbitration proceeding; (5) that Basic did not transfer assets to defeat enforcement of the confirmed arbitration award; and (6) that the NZ action is contrary to American public policy.

On April 19, 1996, Basic informed the High Court of New Zealand of the instant action, and requested the High Court to consider this action as evidence that New Zealand was an inconvenient forum. On May 14, 1996, the High Court of New Zealand granted Fitzroy's motion to strike Basic's "Appearance Under Protest" stating, in relevant part,

> [T]he fact that a proceeding has been filed in the District Court in Illinois is not sufficient to outweigh the reasons advanced by [Fitzroy] at the hearing as to why

1. As an initial procedural matter, the court notes that this case was originally assigned by the court clerk to U.S. District Judge Brian Barnett Duff. The court clerk reassigned the case to the calendar of this court. It is now the obligation of this court to rule on the instant motion.

[Fitzroy] should not be entitled to continue with its claim in New Zealand.... I also think ... [Basic] had plenty of opportunity to make his application in the United States earlier than he did. It has obviously been issued with the sole view of preempting [Fitzroy] from proceeding with its claim in New Zealand.

On May 21, 1996, Basic applied for a review of the High Court's May 14 ruling.

Fitzroy now moves to dismiss Basic's Complaint for declaratory judgment on two grounds. First, Fitzroy argues that Section 2–619(a)(3) of the Illinois Code of Civil Procedure requires that the court dismiss the instant action because "there is another action pending between the same parties for the same cause." 735 ILCS 5/2–619(a)(3). Second, Fitzroy contends that the court should decline to exercise jurisdiction over the subject matter of the instant Complaint. The court will discuss each of these arguments in turn.

## II.

### A. Applicability of Section 2–619(a)(3)

■ Fitzroy urges the court to apply Illinois Code of Civil Procedure Section 2–619(a)(3) and dismiss the Complaint. In support, Fitzroy cites eight cases from the Northern District of Illinois, all of which found the Section to be one of substance and not procedure. The substance/procedure distinction is important; the Rules of Decision Act, 28 U.S.C. § 1652, commands a federal court sitting in diversity to apply federal procedural rules and state substantive laws. *In re Air Crash Disaster Near Chicago,* 803 F.2d 304, 313–14 (7th Cir.1986); *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Not surprisingly, Fitzroy did not cite Seventh Circuit cases. That is because the United States Court of Appeals for the Seventh Circuit declined to decide the issue on several occasions. *See Locke v. Bonello,* 965 F.2d 534, 537 (7th Cir.1992); *Aetna Cas. & Sur. Co. v. Kerr–McGee Chem. Corp.,* 875 F.2d 1252 (7th Cir.1989). Even less surprisingly, *ADS Publ. Servs., Inc. v. The Summit Group, Inc.,* No. 95–6794, 1996 WL 332684

(N.D. Ill. June 13, 1996), was not among the eight cases to which Fitzroy cited. In ADS, this court found Section 2–619(a)(3) to be a rule of procedure and not substance. *Id.* at * 1–2 ("This court finds the recent trend of cases holding the section to be a rule of procedure to be the better rule. Indeed, the Illinois Supreme Court considers it to be procedural in nature: the section exists 'to foster orderly *procedure* by preventing a multiplicity of actions.' *People ex rel. Lehman,* 34 Ill.2d 286, 290, 215 N.E.2d 806 (1966) (emphasis added)."). The Seventh Circuit has not had the opportunity to revisit the issue since the date the court issued the *ADS* order. Accordingly, for the reasons set forth in *ADS,* the court finds Section 2–619(a)(3) to be a state procedural rule inapplicable to a federal court proceeding, and finds Fitzroy's first argument to lack merit.

### B. The Declaratory Judgment Act

Yet, the above finding does not, by itself, doom the motion. Fitzroy also argues that the types of declarations sought by Basic are not among those "allowable" by The Declaratory Judgment Act ("DJA"). The DJA provides, in relevant part,

In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). The purpose of the DJA is clear; Congress enacted it "to avoid accrual of avoidable damages to one not certain of his rights and to afford [an individual] an early adjudication, without waiting until his [or her] adversary should see fit to begin suit, after damage had accrued." *Nucor v. Aceros Y Maquilas de Occidente,* 28 F.3d 572, 577 (7th Cir.1994). Fitzroy contends that the instant case does not present an "actual controversy," as required by both the DJA and the United States Constitution. Alternatively, Fitzroy argues that the court

should exercise its discretion in declining to exercise jurisdiction over the instant action.

### 1. Subject Matter Jurisdiction

In order for the court to entertain the instant action for declaratory judgment, it must first determine whether the court has subject matter jurisdiction, i.e., whether the case presents an "actual controversy" between the parties. *Id.* This requirement "tracks the 'cases' or 'controversies' requirement of Article III." *Harris Trust & Sav. Bank v. E–II Holdings, Inc.*, 926 F.2d 636, 639 (7th Cir.1991) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937), cert. denied, 502 U.S. 866, 112 S.Ct. 192, 116 L.Ed.2d 152 (1991)). The "case or controversy" requirement protects the principle of separation of powers and properly limits the role of the judiciary in a democratic society. *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). "In essence, the requirement keeps federal courts in the business of resolving existing legal disputes and out of the business of offering advice on the legality of a proposed course of action. *See Crowley Cutlery Co. v. United States*, 849 F.2d 273, 276 (7th Cir.1988)." *Deveraux v. City of Chicago*, 14 F.3d 328, 330 (7th Cir. 1994).

Whether the case presents a justiciable controversy depends upon "whether ... there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941) (quoted in *Oneida Tribe of Indians v. Wisconsin*, 951 F.2d 757, 760 (7th Cir.1991)). The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. *South Spring Gold Co. v. Amador Gold Co.*, 145 U.S. 300, 301, 12 S.Ct. 921, 921, 36 L.Ed. 712 (1892). It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, and it must be ripe for judicial action in that "[t]he disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Public Serv. Comm'n of Utah v. Wycoff*, 344 U.S. 237, 243, 73 S.Ct. 236, 240, 97 L.Ed. 291 (1952). A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical, abstract, or purely academic character. *United States v. Alaska S.S. Co.*, 253 U.S. 113, 116, 40 S.Ct. 448, 448, 64 L.Ed. 808 (1920). Before granting declaratory relief, the court "should be 'particularly vigilant' to make certain the case is ripe." *Tobin v. City of Peoria, Ill.*, 939 F.Supp. 628, 634 (C.D.Ill.1996).

■ The court finds that the purported "controversy," that a judgment in favor of Fitzroy against Basic in the NZ action would be an unenforceable judgment, is not an "actual controversy" as required by the Constitution. Basic seeks to have the court declare a future foreign judgment invalid and unenforceable even before Fitzroy has the opportunity to have the future judgment entered by the New Zealand court and confirmed in a United States federal court. Put another way, Basic's act of filing the instant Complaint is an attempt to render null and void a possible future New Zealand judgment, a judgment which "may never come to pass." *See American Fidelity & Cas. Co. v. Pennsylvania Threshermen & Farmers' Cas. Ins. Co.*, 280 F.2d 453, 461 (5th Cir.1960). This attempt is improper for several reasons.

First, the court notes that the NZ action is at a relatively primitive stage. Basic appealed the High Court of New Zealand's order both setting aside Basic's "Appearance Under Protest" and finding that New Zealand was a suitable jurisdiction to entertain the action between the parties. Both parties await appellate review of the order. As such, the NZ action is now held in abeyance at this early stage until further ruling. The New Zealand courts have yet to rule on the sufficiency and substance of the allegations made by Fitzroy. Therefore, the court finds that, without scrutinizing the declarations requested by Basic, any ruling made by a United States federal court on the prospective effect of a possible New Zealand judgment against

Basic—one which may never come to pass—would be premature.

Second, even if such a judgment favorable to Fitzroy but not to Basic does result from the NZ action, the court can only guess as to the particular claims on which the judgment would rest. While the claims involved in the NZ action are clear, they are not concrete. As in the United States federal judicial system, Fitzroy may later seek to withdraw certain claims, and add different and unique claims. Therefore, because the prevailing claims in the NZ action may be different than those here alleged, any American court order involving the presently-pending claims would be useless.

■ Third, if this court were to make the requested declarations, the purpose of the DJA would not be served. As already stated, the purpose of declaratory relief is to allow a party to avoid damage prior to an impending injury-causing event, not to allow a court to advise a party as to the "legality of a proposed course of action." Basic has not shown how the declarations requested of the court will help him avoid imminent harm. Examining closely the sought-after declarations, the court finds no overall worth to them.

Basic requests that this court find that Fitzroy is barred by the doctrines of issue and claim preclusion from filing the NZ action, that New Zealand lacks personal jurisdiction over Basic, that Illinois law provides no liability for negligent factual misstatements by corporate officers, that Fitzroy "could have and should have" raised the alleged misstatement of facts "in arbitration," and that the NZ action is contrary to American public policy. Even assuming *arguendo* that the court would make such findings, it is clear that the findings would be worthless. The action brought by Fitzroy asserts violation of New Zealand law, and findings by this court favorable to Basic would, for obvious reasons, result in neither persuasive nor binding authority on the New Zealand court. The only effect of such declarations would be on Fitzroy's ability to enforce the foreign judgment in the United States. Yet, such a determination by this court at this juncture would be premature. Assuming that Fitzroy

prevails on the NZ action, Basic will have the opportunity to argue the same issues raised in this Complaint to the federal district judge to which any enforcement proceeding is assigned.

In essence, Basic seeks a court declaration based on contingencies: that "if" Fitzroy's Statement of Claim filed with the New Zealand court withstands dismissal, and "if" Fitzroy obtains a judgment against Basic, and "if" Fitzroy attempts to enforce the hypothetical judgment in a United States federal court, than the judgment would be unenforceable. But the court may not take Basic up on his invitation. Though there are some instances in which a declaratory relief is proper despite future contingencies, *see* *Terrell v. Childers*, 836 F.Supp. 468, 476 (N.D.Ill.1993) and *American States Ins. Co. v. Kearns*, 15 F.3d 142 (9th Cir.1994), this case does not present such an instance. The Constitution does not allow a federal district court to issue advisory opinions based on fears of future judgments and speculation. "[I]n the instant case there is no immediate controversy between the parties since it is not certain that [Basic] will ever be compelled to pay any judgment [sought by Fitzroy in New Zealand]." *Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1169 (7th Cir.1969), cert. denied, 395 U.S. 959, 89 S.Ct. 2100, 23 L.Ed.2d 745 (1969). Accordingly, the court dismisses the case as it is without jurisdiction over the case's subject matter.

### 2. Discretionary Jurisdiction

■ Even if the court had found that the instant case presented an "actual controversy" subject to jurisdiction in federal court, the court would have, in its discretion, declined to exercise jurisdiction. A finding of an "actual controversy" does not compel a district court to entertain a declaratory judgment action, *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942), because the DJA does not confer an absolute right upon a litigant to seek a declaratory judgment. *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952); *Green v. Mansour*, 474 U.S. 64, 72, 106 S.Ct. 423, 427, 88 L.Ed.2d 371 (1985); *Cardinal Chem. Co.*

*v. Morton Int'l, Inc.,* 508 U.S. 83, 95 n. 17, 113 S.Ct. 1967, 1974 n. 17, 124 L.Ed.2d 1 (1993). Indeed, looking to the very terms of the DJA ("In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration" (emphasis added)), it is clear that district courts have "wide discretion" in deciding whether or not to exercise this authority. *Wilton v. Seven Falls Co.,* —— U.S. ——, ——, 115 S.Ct. 2137, 2140, 132 L.Ed.2d 214 (1995) (district courts have "discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject-matter jurisdictional prerequisites"); *Reno v. Catholic Social Servs., Inc.,* 509 U.S. 43, 56, 113 S.Ct. 2485, 2495, 125 L.Ed.2d 38 (1993); *Deveraux,* 14 F.3d at 330; *A.G. Edwards & Sons, Inc. v. Public Bldg. Comm'n of St. Clair County, Ill.,* 921 F.2d 118, 120 (7th Cir.1990). "If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." *Wilton v. Seven Falls Co.,* —— U.S. at ——, 115 S.Ct. at 2143.

When determining whether a declaratory action will "serve a useful purpose," the court must weigh "equitable considerations" and the decision should be "informed by the teachings and experience concerning the functions and extent of federal judicial power." *Green v. Mansour,* 474 U.S. 64, 72, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985). The Seventh Circuit adopted the approach utilized by the Sixth Circuit, in *Nationwide Mut. Fire Ins. Co. v. Willenbrink,* 924 F.2d 104 (6th Cir.1991), when weighing such equitable considerations. In using that approach, a district court may look to five equitable considerations as guidance:

(1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata'; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.

*Nucor,* 28 F.3d at 579 (quoting *Nationwide,* 924 F.2d at 105).

### a. Forum Shopping and Procedural Fencing

Just as the New Zealand High Court recognized, the Complaint for declaratory relief here was "obviously . . . [filed] with the sole view of preempting [Fitzroy] from proceeding with its claim in New Zealand." It is clear that, by filing the Complaint, Basic sought to haul Fitzroy, a resident of a foreign land, into an American federal court only to have the court issue an order essentially stating: (1) that the NZ action would have been meritless if brought in the United States; and (2) that, according to American jurisdiction rules and the Rules of Civil Procedure, New Zealand does not have personal jurisdiction over Basic. As discussed above, a ruling favorable to Basic will have no effect on the NZ action; certainly the New Zealand court will not rely upon the opinion of another country's court to determine its jurisdiction over Basic. Nor will the New Zealand court be persuaded by an opinion by this court that, had the NZ action been brought in Illinois, the case would have been dismissed. Instead, Basic filed the instant case in the hope that the New Zealand court would relinquish its jurisdiction over the issues presented. Basic's strategy was a mere attempt "to secure delay [and] to choose a forum," *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.,* 819 F.2d 746, 750 (7th Cir.1987), for the underlying dispute. Basic's strategy failed miserably in New Zealand (the New Zealand court struck the jurisdiction protest and retained jurisdiction over both the parties and the action), and his attempt to forum shop has not gone unnoticed in this American court; "a suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural' plaintiff [should] normally

be dismissed and the case allowed to proceed in the usual way." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,* 10 F.3d 425, 431 (7th Cir.1993). The court finds no reason to depart from the directive in *Allendale.*

■ As a backup tactic, Basic also attempts to render invalid and unenforceable a possible future judgment entered by a New Zealand court. Basic's act of filing this action was an attempt to beat Fitzroy to the court clerk's office before Fitzroy had the opportunity to obtain a foreign judgment and proceed to confirm it in a United States District Court. This strategy is improper; the DJA "is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse." *Terra Nova Ins. Co., Ltd. v. Acer Latin Am., Inc.,* 931 F.Supp. 852, 854 (S.D.Fla.1996). Because it is clear from the record that the action *sub judice* was filed as a method of forum shopping and to win the pursuit to federal court, the court finds this factor alone to weigh against exercising jurisdiction.

### b. International Comity

■ A declaratory action would also create friction between the federal courts of the United States and New Zealand, and would improperly encroach on the jurisdiction of New Zealand. The court is aware that this factor as used by the Seventh Circuit in *Nucor* applies to duplicative state and federal proceedings. "When a related state action is pending, concerns about comity, the efficient allocation of judicial resources, and fairness to the parties come into play." *Chamberlain v. Allstate Ins. Co.,* 931 F.2d 1361, 1367 (9th Cir.1991). Further, "gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Brillhart,* 316 U.S. at 496, 62 S.Ct. at 1176. However, this principle of comity carries into the international realm as well and, for that reason, the court adapts the *Nucor* factor to apply to related foreign actions as well.

■ The international comity principle, also known as the "comity of nations doctrine," counsels for the "recognition of foreign proceedings to the extent that such proceedings are determined to be orderly, fair and not detrimental to the nation's interests." *Pravin Banker Assocs., Ltd. v. Banco Popular del Peru,* 165 B.R. 379, 384 (S.D.N.Y.1994). International comity is "the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of own citizens, or of other persons who are under the protection of its laws." *Hilton v. Guyot,* 159 U.S. 113, 164, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895). "[C]omity will be granted to the decision or judgment of a foreign court if it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated." *Cunard S.S. Co. v. Salen Reefer Servs. AB,* 773 F.2d 452, 457 (2d Cir.1985). As such, "[c]omity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." *Somportex Ltd. v. Philadelphia Chewing Gum Corp.,* 453 F.2d 435, 440 (3d Cir.1971), cert. denied, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972). In accord with the principle of comity between sovereign nations, a district court should decline to exercise jurisdiction under certain circumstances in deference to the laws and interests of another foreign country. *Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa,* 482 U.S. 522, 543 n. 27, 107 S.Ct. 2542, 2555 n. 27, 96 L.Ed.2d 461 (1987). Moreover, where "the foreign action is pending rather than decided, comity counsels that priority generally goes to the suit filed first." *Ronar, Inc. v. Wallace,* 649 F.Supp. 310, 318 (S.D.N.Y. 1986).

■ Consistent with the above rules of law concerning international comity, the court finds that the "comity of nations" doctrine compels the court to decline the exercise of jurisdiction of this declaratory action and, instead, defer to New Zealand's own court the requested jurisdictional and legal determinations. Because Fitzroy filed the NZ action before Basic filed the Complaint, the New Zealand court should have the opportunity to render a judgment, or make other decisions regarding its own jurisdictional and

pleading rules, without an American federal court "looking over its proverbial shoulder," second-guessing each New Zealand court decision, and predicting possible foreign court judgments. Therefore, for reasons of comity, and ever mindful of "the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts ... may hinder the conduct of foreign affairs," *W.S. Kirkpatrick &.Co., Inc. v. Environmental Tectonics Corp., Int'l,* 493 U.S. 400, 404, 110 S.Ct. 701, 704, 107 L.Ed.2d 816 (1990), the court finds that the instant action would serve only to interfere with New Zealand's sovereign right to decide cases brought to its own judicial forum. Accordingly, the court determines that this factor also weighs in favor of dismissing the Complaint.

*c. The Remaining Factors*

Application of the remaining three factors only emphasizes the impropriety and imprudence of exercising jurisdiction. As the court alluded to in prior discussion, any declaration made by this federal district court would not settle the controversy. Rather, the NZ action would continue without delay because any finding made by this court would have no persuasive or authoritative value to the New Zealand court. Moreover, the instant action serves no worthwhile or practical function in clarifying the legal relations at issue. There is no lawsuit filed by either party in either a federal or state court within the boundaries of the United States and, absent a far-to-come judgment in the NZ action, there will be no lawsuit filed by either party in federal or state court.

Instead of entertaining jurisdiction over this declaratory action, the court finds an obvious alternative remedy that is not only a "better" approach, but still allows Basic to argue the same points to an American judge, albeit at a later date. The more prudent and correct vehicle for Basic to use in raising these claims is not by way of the instant Complaint, but to place the same contentions within the four corners of a pleading in response to an anticipated enforcement action. Assuming that a New Zealand court renders a judgment in Fitzroy's favor, Fitzroy must then have to bring an enforcement action against Basic, an Illinois resident, for a state

or federal court to officially "recognize" the judgment and to compel Basic to pay the judgment. This type of action must be brought under the Uniform Foreign Money—Judgments Recognition Act, 735 ILCS 5/12–621. According to Basic, any judgment against him in the NZ action should not be recognized by an Illinois court, or by a federal court sitting in Illinois, because the "cause of action on which the judgment [will be] based is repugnant to the public policy of this state." 735 ILCS 5/12–621(b)(3). Basic will have the opportunity to make that argument. But that opportunity will take place on another day and in front of another judge. This court declines to exercise its jurisdictional power over the action *sub judice.*

### III.

In conclusion, the court finds that this declaratory action does not present a "case or controversy" for the court to decide. Therefore, the court is constitutionally precluded from exercising jurisdiction over the instant action. However, had the court found that an actual and concrete dispute existed between Basic and Fitzroy, it would have nonetheless declined to entertain jurisdiction over the case. For the foregoing reasons, the court grants Fitzroy's motion to dismiss.

IT IS SO ORDERED.