**James P. DEVERAUX, et al.,
Plaintiffs–Appellants,**

v.

**The CITY OF CHICAGO,
Defendant–Appellee.**

No. 92–3707.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 25, 1993.

Decided Jan. 18, 1994.

**329**

actual controversy cognizable by a federal court. We agree that this case does not raise an "actual controversy" and we therefore affirm the judgment of the district court on that basis without reaching the question of whether the plaintiffs failed to state a claim.

## I.

Plaintiffs are Chicago Police Department sergeants and patrol officers who allegedly rank at the top of the City's most recent promotional rosters. These rosters were prepared from tests comprising several components, the results of which had a severe adverse impact on minority candidates. To eliminate the disparate racial impact, and to comply with consent decrees entered in *United States v. City of Chicago*, 73 C 2080, and *Bigby v. City of Chicago*, 80 C 5246, the City employed a scoring device called standardization which raises the mean test scores of minority applicants to the mean of the majority. *Cf. Luddington v. Indiana Bell Telephone Co.*, 966 F.2d 225, 229 (7th Cir.1992). Plaintiffs allege that the City made promotions from these rosters from 1988 to 1991. Congress then enacted § 106 of the Civil Rights Act of 1991[1] making race-based scoring procedures unlawful, at least in some circumstances. Subsequently, the City, apprehending the risk of liability for violating § 106, retired the standardized promotional rosters.

On July 1, 1992, plaintiffs filed a complaint seeking a declaratory judgment that further use of the standardized promotional rosters for police sergeant and lieutenant would not violate § 106 of the Civil Rights Act of 1991. Plaintiffs alleged that the City's refusal to use the rosters because of a misinterpretation of law—namely, that § 106 retroactively invalidates the rosters—denies them due process of law. The City filed a motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and

---

Kenneth N. Flaxman, Chicago, IL (argued), for plaintiffs-appellants.

Sarah Vanderwicken, Despres, Schwartz & Geoghegan, Lawrence Rosenthal, Deputy Corp. Counsel, Kelly R. Welsh, Asst. Corp. Counsel, Benna R. Solomon (argued), Office of Corp. Counsel, Appeals Div., Chicago, IL, for defendant-appellee.

Before FLAUM and EASTERBROOK, Circuit Judges, and SKINNER, District Judge.[*]

FLAUM, Circuit Judge.

The sole question in this case is whether the district court properly dismissed plaintiffs' suit against the City of Chicago ("the City") seeking a declaratory judgment that further use of promotional rosters for police sergeant and lieutenant would not violate Section 106 of the Civil Rights Act of 1991 ("the Act"). Dismissal was granted on two grounds: (1) plaintiffs failed to state a claim for deprivation of procedural due process, and (2) plaintiffs failed to allege a case of

---

[*] The Honorable Walter Jay Skinner, of the District of Massachusetts, sitting by designation.

1. Section 106 of the Civil Rights Act of 1991 states:

   It shall be an unlawful employment practice for a respondent, in connection with the selection or referral of applicants or candidates for employment or promotion, to adjust the scores of, use different cutoff scores for, or otherwise alter the results of employment related tests on the basis of race, color, religion, sex, or national origin.

   42 U.S.C. § 2000e–2(1).

12(b)(6). Plaintiffs, of course, opposed the City's motion and filed their own "cross motion for summary judgment." The district court denied plaintiffs' cross-motion and entered judgment dismissing the case for want of jurisdiction. In so doing, the court noted that plaintiffs' declaratory judgment action failed to state a due process claim, thereby depriving the court of subject matter jurisdiction. In addition, the court held that plaintiffs failed to allege a case of actual controversy because even a ruling that the 1991 Act does not apply to the rosters at issue would not require the City to make promotions from those rosters. Plaintiffs appeal from this judgment. We affirm.

## II.

■ We review the grant of a motion to dismiss for lack of jurisdiction under a *de novo* standard. *Underwood v. Venango River Corp.*, 995 F.2d 677, 679 (7th Cir.1993). We examine first whether dismissal was proper for failure to allege a "case of actual controversy" under the Declaratory Judgment Act. The Supreme Court recently has reminded us that "[t]he exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy," and "a federal court [lacks] the power to render advisory opinions." *U.S. National Bank of Oregon v. Independent Insurance Agents,* —— U.S. ——, ——, 113 S.Ct. 2173, 2178, 124 L.Ed.2d 402 (1993) (citing *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975)). The "case or controversy" requirement protects the principle of separation of powers and properly limits the role of the judiciary in a democratic society. *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). In essence, the requirement keeps federal courts in the business of resolving existing legal disputes and out of the business of offering advice on the legality of a proposed course of action. *See Crowley Cut-*

*lery Co. v. United States,* 849 F.2d 273, 276 (7th Cir.1988).

■ The Declaratory Judgment Act[2] gives courts of the United States discretionary power to issue declarations regarding "the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. As plaintiffs correctly assert, the Declaratory Judgment Act "expands the scope of available remedies" and permits persons "to seek a declaration of the constitutionality of the disputed government action." *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 71 n. 15, 98 S.Ct. 2620, 2629 n. 15, 57 L.Ed.2d 595 (1978). It is also true, however, that courts may not exercise this discretionary power in the absence of an "actual controversy" between the parties. 28 U.S.C. § 2201. This statutory language "tracks the 'cases' or 'controversies' requirement of Article III, [and] saves the statute from unconstitutionally expanding the federal courts' jurisdiction." *Harris Trust and Savings Bank v. E–II Holdings, Inc.,* 926 F.2d 636, 639 (7th Cir. 1991) (citing *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937); *see also Crowley Cutlery,* 849 F.2d at 276 ("[T]he declaratory-judgment statute cannot amend Article III."). In other words, the Declaratory Judgment Act only authorizes courts to grant relief "which is consonant with the exercise of the judicial function in the determination of controversies to which under the Constitution the judicial power extends." *Aetna Life,* 300 U.S. at 240, 57 S.Ct. at 463. To be sure, the distinction between a "controversy" in the Article III sense and an abstract question of law "is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). Nevertheless, in *Aetna Life* the Supreme Court at least outlined the

---

2. The Declaratory Judgment Act states:
    In a case of actual controversy within its jurisdiction ... any court of the United States upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.
    28 U.S.C. § 2201.

broad parameters of a justiciable controversy:

> The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. [citations omitted]. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts.

300 U.S. at 240–241, 57 S.Ct. at 463–64.

■ In this case, plaintiffs seek a declaratory judgment that the City of Chicago would not violate § 106 of the Civil Rights Act of 1991 if it continued to use existing rosters in promoting police sergeant and lieutenant candidates. The City itself takes no position with respect to the scope or application of § 106. In fact, the City submits that it has no interest in forwarding either an expansive or restrictive reading of § 106 because both would limit its flexibility as an employer. In light of the current ambiguity surrounding § 106, and faced with litigation from proponents of both positions, the City simply chose to retire the existing rosters rather than defend them in court.[3] The crux of plaintiffs' claim is that they have a "confident expectation of promotion" if the City were to reinstate the now-retired rosters. However, as plaintiffs' counsel acknowledged at oral argument, neither state nor federal law obligates the City to continue using these rosters. Even if the City were to admit, or if this court were to declare, that plaintiffs' had the correct view of § 106, the City still would be entitled to discard the old rosters and develop new ones.[4] Thus, because nothing in the declaratory judgment plaintiffs seek would bind the City or alter the legal relationship of the parties, we conclude that the district court properly dismissed plaintiffs' action for failure to allege a case or controversy.

### III.

Article III prohibits federal courts from issuing advisory opinions such as that sought by plaintiffs here. We need not consider whether plaintiffs also failed to state a claim under the due process clause because their failure to satisfy the "case or controversy" requirement of Article III required dismissal. The judgment of the district court is

AFFIRMED.

---

**3.** The City submits that the age of the rosters at issue and the limited operational need for additional promotions in the near term also support the decision to retire the rosters.

**4.** The City in fact alleges that it is in the process of developing new rosters.