**Robbin STEWART, Plaintiff,**

**v.**

**Sarah TAYLOR, Clerk of the Circuit Court of Marion County, Indiana, and member of the Marion County Election Board, Richard Milan, member of the Marion County Election Board, John Muller, member of the Marion County Election Board, David Perkins, a member of the Ward 2, Precinct 3 Election Board, in their official and individual capacities, and John Doe; Jeffrey Mallamad, Chairman of the Indiana Election Commission, Butch Morgan, Member of the Indiana Election Commission, Dudley Cruea, Member of the Indiana Election Commission; and Joseph Perkins, Member of the Indiana Election Commission, in their official and individual capacities, Defendants.**

No. IP 96–1085–C–B/S.

United States District Court, S.D. Indiana, Indianapolis Division.

Jan. 22, 1997.

Michael T. Schaefer, Indianapolis, IN, for Plaintiff.

Douglas J. Webber, Webber & Barber, Indianapolis, IN, for Defendants.

## ENTRY DISCUSSING GRANT OF SUMMARY JUDGMENT

BARKER, Chief Judge.

Plaintiff Robbin Stewart, a Republican candidate for a seat on the Center Township Advisory Board in last November's election, has brought an Amended Complaint against the named Defendants seeking a declaratory judgment that Indiana Code section 3–9–3–2, a state election campaign statute which prohibits anonymous electoral campaign literature, is unconstitutional. Stewart alleges that the provision is an unconstitutional abridgement of his right of free speech guaranteed by the First and Fourteenth amendments to the United States Constitution and by Articles 1 and 2 of the Indiana Constitution. Stewart also seeks an award of compensatory damages against Defendants pursuant to 42 U.S.C. § 1983 for having violated his constitutional rights under color of state law and an award of attorney fees and costs pursuant to 42 U.S.C. § 1985. The matter is presently before the Court on Stewart's motion for summary judgment on his declaratory judgment claim. For the following reasons, the Court grants the motion.

### I. Statement of Facts

The material facts of this case are not in dispute. *See* Def.'s Resp.Br., pp. 2–3. Stewart, a resident of Marion County, Indiana, was a successful candidate for the Republican nomination for the District 3 seat on the Center Township Advisory Board in the May 7, 1996 primary election. The day of the primary election, Stewart placed a sign near the Ward 2, Precinct 3, polling station, located at Indianapolis Public School 101, which read "Robbin Stewart for Township Advisory Board Vote Tuesday." The sign did not identify the party who paid for it. David Perkins, a Ward 2 precinct election official, told Stewart that he intended to remove the sign at the insistence of a Democratic poll watcher, whom Stewart has identified as John Doe in his Amended Complaint, on the grounds that the sign did not comply with Indiana Code section 3–9–3–2. That statute states in relevant part as follows:

(a) Except as provided in subsection (c), this section applies to an individual ... that purchases advertisement time or space or circulates or publishes material in support of or in opposition to:

(1) a candidate;

\*    \*    \*    \*    \*    \*

(b) The individual, organization, or committee shall include in the advertisement or material the following statement or the equivalent:

"Paid for by ____ (insert the name of the individual who paid for the advertisement and, if the advertisement is paid for by an organization or a committee, include the name of the chairman or treasurer of the organization or committee) and (if presented in support of a candidate or more than one (1) candidate) presented ____ (insert either "with" or "without") the approval of ____ (insert the name of each candidate), candidate for ____ (the office or offices for which each candidate is running)."

Ind.Code § 3–9–3–2. After a precinct official conferred with Douglas Webber, an attorney with the Marion County Election Board, Perkins removed Stewart's sign.

Stewart won the primary election for the Republican nomination for the Township Board. Several days after the election, Webber advised Stewart that the precinct officials would continue to enforce section 3–9–3–2 and would require all election signs to identify their authorship and source of funding. Stewart suspended production of anonymous campaign literature for the November 5, 1996 General Election as a result of Webber's position.

Following the primary election, Stewart filed on August 1, 1996 a complaint for preliminary and permanent injunction, declaratory judgment and damages against Sarah Taylor, the Clerk of the Court of Marion County, Richard Milan and John Muller, members of the Marion County Election Board, David Perkins, a member of the Ward 2, Precinct 3 Election Board, and a Democratic poll watcher whom Plaintiff identified

as John Doe ("County Defendants"). This original complaint contained two principal claims. First, Plaintiff moved for a preliminary injunction against the enforcement of Indiana Code sections 3–8–7–21 and 3–8–7–22 prohibiting dual party nominations as an unconstitutional abridgment of his right of political association. Second, Plaintiff sought a judgment declaring Indiana Code section 3–9–3–2 prohibiting anonymous electoral campaign literature to be unconstitutional. After a hearing on Plaintiff's motion for a preliminary injunction, Judge Dillin of this Court found that sections 3–8–7–21 and 3–8–7–22 passed constitutional muster and denied Stewart's motion on August 19, 1996. Stewart filed a notice of appeal on August 22.

On August 30, 1996 Plaintiff moved for summary judgment on the issue of the constitutionality of section 3–9–3–2 prohibiting anonymous electoral campaign literature.[1] County Defendants submitted a response brief on September 16, 1996. During an October 29, 1996 telephone conference, which the Court conducted with counsel for Plaintiff and County Defendants, it was agreed that, to properly challenge the constitutionality of section 3–9–3–2, Plaintiff would need to name members of the Indiana Election Commission as additional defendants so as to properly represent the State's interests. Plaintiff filed an Amended Complaint on November 4, 1996 and named, in addition to the County Defendants, Indiana Election Commission members Jeffrey Malamad, Butch Morgan, Dudley Cruea, and Joseph Perkins ("State Defendants").[2] After making an appearance, State Defendants moved on December 23, 1996 to adopt County Defendants' brief in response to Plaintiff's summary judgment motion, which motion to adopt the Court hereby grants.[3]

---

**1.** Plaintiff's motion does not seek summary judgment on Plaintiff's claims for damages under 42 U.S.C. § 1983 or attorney fees and costs under 42 U.S.C. § 1985. These claims remain unbriefed and unresolved.

**2.** Stewart included in his Amended Complaint the same claim for preliminary and permanent injunctive relief in regard to sections 3–8–7–21 and 3–8–7–22 that Judge Dillin denied on August 19, 1996. Judge Dillin's decision, of course, serves as res judicata and precludes Stewart

from relitigating that claim merely by adding new defendants. Moreover, Stewart's filing of a notice of appeal of Judge Dillin's decision strips this Court of any jurisdiction over that claim. *See Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982).

**3.** Because Plaintiff's Amended Complaint differs from his original complaint only in its addition of State Defendants as parties to the lawsuit, we construe Plaintiff's motion for summary judg-

## II. Declaratory Action

Stewart seeks a declaratory judgment that section 3–9–3–2 violates the First Amendment and Articles 1 and 2 of the Indiana Constitution. The Declaratory Judgment Act gives courts of the United States discretionary power to issue declarations regarding "the rights and other legal relations of any interested party seeking such declarations." 28 U.S.C. § 2201.[4] *See Deveraux v. City of Chicago*, 14 F.3d 328, 330 (7th Cir.1994). It is well recognized that the Act provides a way of challenging the constitutionality of state statutes, such as the Indiana statute at issue here. *See* 6A James W. Moore et al., Moore's Federal Practice ¶ 57.18[2] (2d ed. 1996). Nevertheless, courts may not exercise discretionary power provided by the Act in the absence of an "actual controversy" between the parties. 28 U.S.C. § 2201; *Deveraux*, 14 F.3d at 330. The Declaratory Judgment Act's "actual controversy" requirement tracks the "case" or "controversy" requirement of Article III. *See Deveraux*, 14 F.3d at 330; *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1757. *See also Trippe Mfg. Co. v. American Power Conversion*, 46 F.3d 624, 627 (7th Cir.1995) (Declaratory Judgment Act allows federal courts to render judgments "only where there exists an 'actual controversy': the latter requirement is a 'jurisdictional prerequisite of constitutional dimensions' ") (internal citation omitted). In other words, the Act authorizes courts only to grant relief "which is consonant with the exercise of the judicial function in the determination of controversies to which under the Constitution the judicial power extends." *Deveraux*, 14 F.3d at 330 (quoting *Aetna*

*Life Insurance Co. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937)). *Cf. Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982) ("Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies' "). Consequently, we must determine whether Stewart has presented a justiciable claim.[5]

"In determining whether or not an actual controversy exists, 'the question in each case is whether the facts alleged, under all circumstances, show that there is a controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment.' " *Trippe Mfg. Co. v. American Power Conversion*, 46 F.3d 624, 627 (7th Cir.1995) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)). These are the same prudential concerns that inform the several doctrines that have evolved to elaborate Article III's "case or controversy" requirement. The Article III doctrine that requires a litigant to have "standing" to invoke the power of a federal court is perhaps the most important of these case-or-controversy doctrines. *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). To establish standing, a plaintiff must: (1) have suffered an "injury in fact," defined as "an invasion of a legally-protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) establish a causal connection between the conduct at issue and the injury; and (3) show that a favorable judicial decision would likely, rather than specula-

ment, filed and served prior to the amendment of the complaint, as nevertheless directed in regard to Plaintiff's Amended Complaint. We similarly construe Defendants' response briefs as made in regard to the Amended Complaint.

4. The Declaratory Judgment Act states:
   In a case of actual controversy within its jurisdiction ... any court of the United States upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the

force and effect of a final judgment or decree and shall be reviewable as such.
28 U.S.C. § 2201.

5. While Defendants do not question Stewart's standing to bring his declaratory action, we must, nevertheless, determine that we have jurisdiction over Stewart's suit. *See Sherman v. Community Consol. Sch. Dist. 21 of Wheeling Tp.*, 980 F.2d 437, 440 (7th Cir.1992), *cert. denied*, 508 U.S. 950, 113 S.Ct. 2439, 124 L.Ed.2d 658 (1993) (jurisdiction is a court's first order of business).

tively, redress the injury. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (restating case law). *See also Marozsan v. United States,* 90 F.3d 1284, 1288 (7th Cir. 1996); *Briggs v. Ohio Elections Commission,* 61 F.3d 487, 491 (6th Cir.1995).

Our standing inquiry focuses on whether Stewart has suffered an injury in fact. In this case, an election campaign sign that Stewart had put up beside a polling station during his quest for the Republican nomination was removed on account of the challenged statute. The removal of Stewart's campaign sign most likely is not an event that by itself confers standing on Stewart because he would not be able to show any injury. Stewart won the primary without the sign. Therefore, if Stewart is to have standing to sue, it must be as a result of the Election Board's threat that it will continue to enforce the challenged campaign statute. While Stewart succeeded in securing the nomination and while he voluntarily discontinued the use of anonymous campaign literature during the remainder of the general electoral campaign, he nevertheless continued to be subject to enforcement of the statute through the November 5, 1996 General Election. Typically, the threat of an injury is enough to confer standing. As the Supreme Court noted in *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), the "injury in fact" requirement is satisfied upon a finding that a plaintiff has suffered "some threatened or actual injury resulting from the putatively illegal action." This is especially so in the field of First Amendment law. *See, e.g., Steffel v. Thompson,* 415 U.S. 452, 458–60, 94 S.Ct. 1209, 1215–16, 39 L.Ed.2d 505 (1974) (threats of prosecution for handbilling on sidewalk against American involvement in Vietnam established petitioner's standing to challenge state trespass law); *Hoover v. Wagner,* 47 F.3d 845, 847 (7th Cir.1995) (anti-abortion activist established standing based on reasonable probability of his suffering arrest, prosecution, and conviction as a result of his protest); *Pestrak v. Ohio Elections Commission,* 926 F.2d 573, 576 (6th Cir.), *cert. dismissed,* 502 U.S. 1022, 112 S.Ct. 672, 673, 116 L.Ed.2d 763 (1991) (plaintiff established

standing where his previous political activities led to his charge and investigation by the state election commission and where he planned to continue in the same kind of political activities); *West Virginians For Life, Inc. v. Smith,* 919 F.Supp. 954 (S.D.W.Va.1996) (plaintiffs had standing to challenge state statutes regulating distribution of voter guides where plaintiffs faced prospective sanctions on account of distributing voter guides in manner they desired). The free speech cases cited above involved threats of prosecution. Stewart does not allege that any continued violation of section 3–9–3–2 by him would lead to his prosecution. He does, however, allege that a Marion County Election Board official told him that the statute would be enforced. Under Indiana law, an infraction of section 3–9–3–2 is a Class A misdemeanor. *See* Ind.Code § 3–14–1–3. Furthermore, the Marion County Election Board would be obligated to report any infraction of section 3–9–3–2 by Stewart to the Marion County prosecutor. *See* Ind.Code § 3–14–5–3(b) ("The state election board and each county election board shall report a violation of this title as a felony or misdemeanor to the appropriate prosecuting attorney and the alleged violator"). The Board's promise to enforce the statute consequently raised the specter that Stewart would have been prosecuted if he had continued to disobey the statute. This threat is enough to confer standing. As the Supreme Court stated in *Steffel,* where a plaintiff is threatened with prosecution "it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." 415 U.S. at 459, 94 S.Ct. at 1216. *See also Bland v. Fessler,* 88 F.3d 729 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 513, 136 L.Ed.2d 403 (1996) ("That one should not have to risk prosecution to challenge a statute is especially true in First Amendment cases, '[f]or free expression—of transcendent value to all society, and not merely to those exercising their rights—might be the loser' ") (quoting *Dombrowski v. Pfister,* 380 U.S. 479, 486, 85 S.Ct. 1116, 1120–21, 14 L.Ed.2d 22 (1965)).

The remaining two required elements of standing are easily met. The threat of injury was clearly the result of the challenged statute and a declaration that the statute is unconstitutional would most likely dissuade the Marion County Election Board from attempting to enforce the statute.

■ A second case-or-controversy doctrine implicated in the present case is that of mootness. A "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969). Since the time Stewart filed his original complaint, the November election has come and gone. This does not, however, necessarily render the lawsuit moot. The Supreme Court has recognized that often in cases challenging statutes that govern elections there is not sufficient time between the filing of the complaint and the election to obtain judicial resolution of the controversy before the election. As a result, the Court has allowed such challenges to proceed under the "capable of repetition yet evading review" exception to the mootness doctrine. *See Norman v. Reed*, 502 U.S. 279, 286–89, 112 S.Ct. 698, 704–05, 116 L.Ed.2d 711 (1992); *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 772–76, 98 S.Ct. 1407, 1414–15, 55 L.Ed.2d 707 (1978); *Storer v. Brown*, 415 U.S. 724, 737 n. 8, 94 S.Ct. 1274, 1282 n. 8, 39 L.Ed.2d 714 (1974); *Moore v. Ogilvie*, 394 U.S. 814, 814–16, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969). *See also Citizens For John W. Moore v. Board of Election Com'rs of the City of Chicago*, 794 F.2d 1254, 1256 (7th Cir.1986). This exception applies under two conditions: "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subject to the same action again." *Meyer v. Grant*, 486 U.S. 414, 417 n. 2, 108 S.Ct. 1886, 1890 n. 2, 100 L.Ed.2d 425 (1988) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975) (per curiam)). *See also First National Bank of Boston v. Bellotti*, 435 U.S. 765, 772–76, 98 S.Ct. 1407, 1414–15, 55 L.Ed.2d 707 (1978); *Teper v. Miller*, 82 F.3d 989, 992 n. 1 (11th Cir.1996) (citing *Weinstein*). In the instant case, neither party has informed the Court of the results of the November election, or whether Stewart plans to be a candidate in a future municipal, county, or state-wide election. Despite the absence of such information in the record, we find that Stewart's challenge satisfies both prongs of the test. For the most part, in cases involving challenges to election rules, the Supreme Court has found the two-prong test easily satisfied. *See, e.g., Norman*, 502 U.S. at 288, 112 S.Ct. at 705 ("There would be every reason to expect the same parties to generate a similar, future controversy subject to identical time constraints if we should fail to resolve the constitutional issues that arose in 1990"); *Meyer*, 486 U.S. at 417 n. 2, 108 S.Ct. at 1890 n. 2; *Bellotti*, 435 U.S. at 774–75, 98 S.Ct. at 1414–15. *See also Patriot Party v. Allegheny County Dept. of Elections*, 95 F.3d 253, 257 (3rd Cir.1996) (quoting *Norman*). In the instant case, we are skeptical that future local or county election campaigns will be long enough in duration to see both the commencement and resolution of a constitutional challenge to section 3–9–3–2. *See Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973) (finding that because the normal 266–day human gestation period is too short for the usual appellate procedure to run its course, pregnancy provides a classic justification for a conclusion of nonmootness). While we do not know whether Stewart is currently holding the office for which he ran, we can reasonably assume that he will participate in future election campaigns, either as candidate or supporter, and will again seek to avoid the requirements of the statute. Therefore, we find that Stewart's case is not moot.

■ Turning to the substantive issue in the case, we must determine whether section 3–9–3–2 violates Stewart's First Amendment right to freedom of speech. In *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995), the Supreme Court struck down as unconstitutional an Ohio statute that required all printed political campaign literature in the state to contain the name and address of the person or head of the organization responsible

for the publication of the literature. The Court held that the Ohio statute violated the First Amendment because it burdened core political speech in a manner that was not narrowly tailored to serve an overriding state interest. *Id.* at ——— ———, 115 S.Ct. at 1519–24. Stewart contends that this case is controlled by *McIntyre.* Stewart is correct.

■■■ The Supreme Court made clear in *McIntyre* that campaign literature in support of a candidate for elective office is "core political speech" that is entitled to the fullest protection of the First Amendment.

> Discussion of public issues and debates on the qualifications of candidates are integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression in order to assure the unfettered interchange of ideas for the bringing about of political and social changes desired by the people. Although First Amendment protections are not confined to the exposition of ideas, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs, of course including discussions of candidates. This no more than reflects our profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open. In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential, for the identities of those who are elected will inevitably shape the course that we follow as a nation. As the Court observed in *Monitor Patriot Co. v. Roy,* 401 U.S. 265, 272, 91 S.Ct. 621, 625,

28 L.Ed.2d 35 (1971), "it can hardly be doubted that the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office."

514 U.S. at ——— —— ———, 115 S.Ct. at 1518–19 (internal quotations and citations omitted). When statutes and regulations burden core political speech, courts must apply "exacting scrutiny" when passing on the constitutionality of those laws and uphold them only when they are narrowly tailored to serve an overriding state interest. *Id.* at ——, 115 S.Ct. at 1519. *See also Burson v. Freeman,* 504 U.S. 191, 198, 112 S.Ct. 1846, 1851, 119 L.Ed.2d 5 (1992). The Ohio statute challenged in *McIntyre,* Ohio Rev.Code § 3599.09(A) (1988), like section 3–9–3–2, required that all campaign signs disclose the name of the person or the name of an official of the organization responsible for issuing or making the sign.[6] The Court found the state's putative interest in preventing fraudulent and libelous statements and in providing the electorate with relevant information did not justify the Ohio statute's ban on anonymous campaign literature, because the statute's strictures applied to all campaign literature, not just the misleading, fraudulent, or libelous. *Id.* at ——— ——, 115 S.Ct. at 1519–22. As with the Ohio statute, section 3–9–3–2 also makes no distinction among the various types of campaign literature that would narrowly tailor the statute's requirements to the furtherance of a legitimate state goal or interest. Section 3–9–3–2 applies to all campaign literature not specifically exempted on the basis of impracticality in subsection (c) of the provision.[7] The statute

**6.** The Ohio statute provided in pertinent part:
  No person shall write, print, post, or distribute, or cause to be written, printed, posted, or distributed, a notice, placard, dodger, advertisement, sample ballot, or any other form of general publication which is designed to promote the nomination or election or defeat of a candidate, or to promote the adoption or defeat of any issue, or to influence the voters in any election, or make an expenditure for the purpose of financing political communications through newspapers, magazines, outdoor advertising facilities, direct mailings, or other similar types of general public political advertising, or through flyers, handbills, or other nonperiodical printed matter, unless there ap-

pears on such form of publication in a conspicuous place or is contained within said statement the name and residence or business address of the chairman, treasurer, or secretary of the organization issuing the same, or the person who issues, makes, or is responsible therefor.
Ohio Rev.Code § 3599.09(A) (1988); *McIntyre,* 514 U.S. at —— n. 3, 115 S.Ct. at 1514 n. 3.

**7.** Indiana Code section 3–9–3–2(c) states:
  This section does not apply to business cards, tickets, bumper stickers, campaign buttons, pens, pencils, or other campaign items where identification is impractical because of the size or shape of the item.

burdens dissemination of campaign literature that is informative as well as misleading, innocuous as well as libelous, truthful as well as fraudulent. Therefore, we find that section 3–9–3–2 is not narrowly tailored to meet a compelling state interest.

Defendants contend that the facts of this case are distinguishable from the facts of *McIntyre* in three respects. Defendants' distinctions, however, are immaterial. First, Defendants note that Stewart is a candidate for elective office whereas the plaintiff in *McIntyre* was merely "a private citizen attempting to influence a bipartisan public issue." (Def.'s Resp. Br., p. 5) The Supreme Court's discussion of the First Amendment right to engage in anonymous political expression in *McIntyre* clearly identified this right as belonging to candidates for political office. We repeat the Supreme Court's observation in *McIntyre* that "it can hardly be doubted that the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office." *Id.* at –– ––––, 115 S.Ct. at 1518–19 (quoting *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272, 91 S.Ct. 621, 625, 28 L.Ed.2d 35 (1971)). *See also Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 223, 109 S.Ct. 1013, 1020, 103 L.Ed.2d 271 (1989) ("the First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office").

Second, Defendants note that Stewart's placard was displayed on the day of the primary while Mrs. McIntyre's leaflets were distributed some days before the referendum vote. Neither the Ohio statute nor the current Indiana statute, however, contains any time limit or otherwise makes any exception to the scope of its proscription on the basis of when the anonymous campaign literature is disseminated. Indeed, Defendants' argument is specifically refuted in *McIntyre* where the Court found the Ohio statute not sufficiently tailored to meet the state's interest in avoiding eleventh-hour fraud because "[i]t applies not only to leaflets distributed on the eve of an election, when the opportunity for reply is limited, but also to those distributed months in advance." *Id.* at ––––, 115 S.Ct. at 1521.

Defendants' last distinction is that Stewart was displaying a placard while Mrs. McIntyre was distributing leaflets. Defendants, however, are creating a distinction that the Court's opinion in *McIntyre* does not even adumbrate. As stated above, the Supreme Court's discussion of anonymous political expression specifically finds its value to campaigns for political office as great if not greater than its value to referenda.

Defendants next contend that even if section 3–9–3–2 is subject to the exacting scrutiny called for by *McIntyre*, Indiana has narrowly tailored the statute to a legitimate state interest in "insuring fundamental fairness in the voting process." (Def.'s Resp. Br., p. 7) Defendants, however, do not explain how the statute is narrowly tailored to promote that interest. Seeking some support for the measure, Defendants compare section 3–9–3–2 to a Tennessee statute prohibiting election campaigning within 100 feet of a polling place, which the Court upheld in *Burson v. Freeman*, 504 U.S. 191, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992). In *Burson* the four-justice plurality that applied the exacting-scrutiny standard specifically found that "some restricted zone is necessary in order to serve the States' compelling interests in preventing voter intimidation and election fraud." *Id.* at 206, 112 S.Ct. at 1855. The Court further found that a campaign-free zone with a 100–foot radius mandated by the Tennessee statute was sufficiently tailored to meet the state's goal. In contrast to that finding, the Supreme Court in *McIntyre* specifically found the Ohio statute, which is directly analogous to section 3–9–3–2, not narrowly tailored to further the same state interests identified by Defendants. In light of the Court's holding in *McIntyre*, Defendants' reliance on *Burson* is clearly misplaced.

The Supreme Court opinion in *McIntyre* leaves little doubt that, as a matter of substantive law, a blanket prohibition of anonymous political speech in the context of a campaign for elective office is unconstitutional. As the Court stated, a blanket prohibition such as was mandated by the invalidated

Ohio law and such as section 3–9–3–2 currently mandates

encompasses documents that are not even arguably false or misleading. It applies not only to the activities of candidates and their organized supporters, but also to individuals acting independently and using their own modest resources. * * * It applies no matter what the character or strength of the author's interest in anonymity.

*Id.* at —— – ——, 115 S.Ct. at 1521–22 (footnote omitted). In a footnote, the Supreme Court approvingly quoted *People v. White*, 116 Ill.2d 171, 180, 107 Ill.Dec. 229, 233, 506 N.E.2d 1284, 1288 (1987), in which the Illinois Supreme Court struck down an Illinois statute analogous to section 3–9–3–2:

Implicit in the State's . . . justification is the concern that the public could be misinformed and an election swayed on the strength of an anonymous smear campaign to which the candidate could not meaningfully respond. The statute cannot be upheld on this ground, however, because it sweeps within its net a great deal of anonymous speech completely unrelated to this concern. In the first place, the statute has no time limit and applies to literature circulated two months prior to an election as well as two days before.

*Id.* at —— n. 16, 115 S.Ct. at 1521 n. 16. Thus, because section 3–9–3–2, like the Illinois and Ohio statutes, would prohibit anonymous political speech that is completely innocuous and completely unrelated to the state's putative concerns, the Indiana statute is unconstitutional. That Stewart might be unaffected, as a practical matter, by the inclusion of the identifying information on his campaign literature is irrelevant: the strictures of section 3–9–3–2 apply to all persons regardless of their individual concerns about privacy and anonymity.

### III. Conclusion

For the foregoing reasons, the Court finds that Indiana Code section 3–9–3–2 violates the right to free speech secured by the First and Fourteenth Amendments to the United States Constitution. Because the statute clearly runs afoul of the federal Constitution, we need not address whether the statute also violates Articles 1 and 2 of the Indiana Constitution.