**Brian MAJORS, et al., Appellants (Plaintiffs Below),**

v.

**Marsha ABELL, et al., Appellees (Defendants Below).**

No. 94S00–0303–CQ–94.

Supreme Court of Indiana.

July 24, 2003.

Robbin Stewart Indianapolis, IN, Attorney for Appellants.

W. Russell Sipes, Indianapolis, IN, Deborah Goldberg J.J. Gass, New York, NY, Amicus Curiae Common Cause/Indiana.

Steve Carter, Attorney General, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

## ON CERTIFIED QUESTION BOEHM

BOEHM, Justice.

The United States for the Seventh Circuit has requested our response to the following certified question:

Is the term "persons" in Ind.Code §§ 3–9–3–2.5(b)(1), (d) limited to candidates,

authorized political committees or sub-committees of candidates, and the agents of such committees or subcommittees, or does it have a broader scope, and, if so, how much broader?

The certified question arises in a lawsuit brought by several individuals challenging Indiana Code section 3–9–3–2.5 (Supp. 2001) as violating their rights to free speech guaranteed under the First Amendment to the Constitution of the United States. The United States District Court for the Southern District of Indiana dismissed the complaint for lack of standing as to some plaintiffs and mootness as to others. The Seventh Circuit concluded that neither standing nor mootness precluded consideration of the merits of the plaintiffs' claims, but noted that resolution of an issue of interpretation of the statute might control the disposition of the constitutional issues the plaintiffs seek to raise. Accordingly, the Seventh Circuit certified this question to this Court pursuant to 7th Cir. Rule 52 and Ind. R.App. Proc. 64. *Majors v. Abell,* 317 F.3d 719, 725 (7th Cir.2003).

Section 2.5 is a part of the Indiana Election Laws. In broad brush, it provides that any "person" must include a "disclaimer" in "general public political advertising" if the person either "solicits a contribution" or finances "communications expressly advocating the election or defeat of a clearly identified candidate." This "disclaimer"

must disclose who paid for the ad, and, under some circumstances, who authorized it. The section provides a number of exemptions and definitions and includes detailed provisions requiring different disclosures depending on whether the material is authorized and/or financed by a candidate, a candidate's committee, a political committee (PAC), or a party organization.[1]

■ The issue as framed by the Seventh Circuit appears as an abstract question of statutory construction. Indeed, as that court observed, on its face, the statute seems quite plainly to apply to communications financed by every individual and every form of legal entity. That is the meaning ordinarily given to "person" in statutes, and is the meaning provided by section 36 of the "Definitions" Chapter of the Election Laws. According to Indiana Code section 3–5–2–36, " 'person' means an individual or an organization." Section 1 of the same Chapter provides that its definitions "apply throughout this title," and "this title" inescapably refers to Title 3 ("Elections").[2] This definition has been in the Election Laws since the election laws were overhauled in 1986.[3] It is in substance the same as earlier more prolix but equally broad definitions of "person."[4]

The State points out that Section 2.5 is found in Article 9, Chapter 3, and Section 1 of that Chapter entitled "Application of chapter"[5] includes the following provision:

---

1. Section 2.5 is rather lengthy. Because its constitutionality may be viewed as turning on the extent to which it is "narrowly tailored" we reproduce the statute in its entirety as an Appendix to this opinion.

2. For those unfamiliar with Indiana statutes, the hierarchy of the Indiana Code, in descending order, is Title, Article, Chapter, Section.

3. Public Laws 5–1986 and its companions, 6–1986, 7–1986 and 8–1986 fill 315 pages of the 1986 Acts. 1986 Ind. Acts 25–340.

4. Public Law 6–1976 included the following definitions for purposes of the then current election law: "[P]erson" includes individuals, business organizations, labor organizations, religious organizations, political organizations, trustees, receivers and any other organization, association, cooperative or group of persons whatsoever. 1976 Ind. Acts 13.

5. West Annotated Code uses the same title for this section as the official Indiana Code, ("Application of chapter"). Burns Annotated Code calls it "Applicability."

(a) ... this chapter applies to candidates in all elections and caucuses and to the following types of committees:

(1) Candidate's committees.

(2) Regular party committees.

(3) Political action committees.

(4) An auxiliary party organization.

(5) A legislative caucus committee.

Ind.Code § 3–9–3–1 (1998).[6] The State contends that this section has the effect of including only candidates and the listed types of committees among the "persons" required by Section 2.5 to include a disclaimer. Indeed, the State claims the "Application" section is meaningless unless given that construction. We find this contention difficult to fit within the statutory framework. We have already noted the seemingly ironclad and purposeful use of "person" as all-inclusive. The "Application" section the State cites is not inconsistent with the conclusion that "person" has its usual meaning. Language identical to the quoted portion of Chapter 3, Section 1(a) appears in Section 1(a) of each of the other four Chapters in Article 9.[7] It seems clear that these "Application" provisions serve to identify the types of elections to which the various chapters apply, but do not limit the reference to "persons" within those chapters. Several of the provisions in these statutes would make no sense whatever if "person" were limited as the State suggests. For example, the Trea-

surer of a committee is required to file a report listing every "person" who contributed over $100.[8] A committee may remove a "person" as chair or treasurer without cause.[9] Every "person" who accepts a contribution for a committee must get it to the Treasurer within thirty days.[10] And so on. "Person" in section 2.5 is the same term introduced by the same application section found in other sections of the same "Election Campaigns" Chapter where it can only be read to mean everybody and everything. As a matter of statutory interpretation, there is little wiggle room here.

█ In the face of this rather overwhelming statutory evidence, both the plaintiffs and the State nevertheless contend that constitutional doctrine should govern our interpretation of the statute. As the Seventh Circuit noted, courts, including this one, sometimes find elasticity to preserve constitutionality. *See, e.g., A Woman's Choice–East Side Women's Clinic v. Newman*, 671 N.E.2d 104, 107 (Ind. 1996) ("we would construe the ... [statute] in a constitutional manner insofar as the statutory language would permit."). Accordingly, we consider whether constitutional considerations drive us to find the statute to be more limited than appears on its face.

The State argues for its less expansive reading on the ground that the statute, if applicable to political advertising by any-

---

**6.** Subsection (b) excepted federal candidates from the limitation on the use of contributions imposed by Section (4). Effective July 1, 2003, a new subsection (c) was added to Indiana Code 3–9–3–1 providing that Section 2.5 does not apply to candidates for precinct committeeman or state convention delegate. None of these exceptions are relevant for our purposes.

**7.** All five Subsections (a) are identical except for the exceptions unique to each provision. The only differences, which are irrelevant for these purposes, appear in subsections (b) and

(c) of the various Application sections. These have the effect of exempting different types of elections (e.g. school boards) from certain requirements, but not others. *Compare* I.C. § 3–9–3–1 *with* I.C. § 3–9–1–1, I.C. § 3–9–2–1, I.C. § 3–9–4–1 and I.C. § 3–9–5–1.

**8.** I.C. § 3–9–5–14(3)(A).

**9.** I.C. § 3–9–1–19.

**10.** I.C. § 3–9–2–9.

one, may fall under the plaintiffs' First Amendment attack. In order to understand the State's contention it is necessary to review the federal constitutional doctrine surrounding regulation of campaign literature. In *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995), the Supreme Court invalidated an Ohio statute regulating campaign literature. Mrs. McIntyre was a classic "lone pamphleteer" who printed up some materials opposing her local school tax levy. Some of these identified her as the author and others bore only the legend "CONCERNED PARENTS AND TAX PAYERS". She was convicted and fined $100 under an Ohio statute making it a misdemeanor to omit identification of the source of any campaign materials in any candidate or public question election. Although she died before the case reached the Supreme Court of the United States, her estate carried on and ultimately prevailed in her contention that her activity was constitutionally protected.

*McIntyre* recognized that election disclosure laws raised different considerations from those presented by the general prohibition of anonymous pamphlets that had been held unconstitutional in *Talley v. California*, 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960). Laws prohibiting anonymous communications at least to some extent burden speech and raise First Amendment concerns. If the speech is political, as it undoubtedly is in an election, it enjoys the highest level of protection, and any restriction of that speech requires a compelling governmental interest. Ohio sought to justify what is obviously an abridgment of speech principally on the ground that its statute guarded against misinformation in campaigns, and was therefore narrower than the general ban that *Talley* had invalidated. This contention did not carry the day.

The election in *McIntyre* was a school tax referendum. The focus of that election was a single issue, not individual candidates and their character or their stances on multiple issues. In such an election, the Supreme Court viewed the state interest as principally "[t]he simple interest in providing voters with additional relevant information." *McIntyre*, 514 U.S. at 348, 115 S.Ct. 1511. So viewed, *McIntyre* found little force to the state interest asserted to justify its regulation of speech. The state cannot compel a speaker to add items of information to those the speaker chooses to present. To the extent completeness of information is the State's concern, requiring identification of the source adds little to the state's justification, and fails to survive the strict scrutiny required of statutes burdening political speech. As the Seventh Circuit noted, the majority in *McIntyre* described the identity of the author as just one more item of information that the author may choose to include or omit. *Majors*, 317 F.3d at 724 (citing *McIntyre*, 514 U.S. at 348, 115 S.Ct. 1511). Accordingly, the source of the statement was not particularly useful in evaluating its merits on a referendum issue. The Supreme Court found the state's interest in preserving the accuracy of statements in elections to be "on a different footing" from the general interest in providing more information. Despite its greater force, that interest was not furthered by the Ohio statute, which provided no exemption for truthful communications, and other statutory provisions and common law remedies were available to redress false communications.

Based on its reading of the Seventh Circuit's opinion to suggest that Section 2.5 will be found unconstitutional under *McIntyre* if it regulates speech by "every individual and organization," the State argues for a construction that would require a "disclaimer" only from those candidates

and committees. Because the disclaimer statute burdens core political speech, it is subject to "strict scrutiny." *McIntyre*, 514 U.S. at 347, 115 S.Ct. 1511. However, we are not persuaded that *McIntyre* necessarily implies that the Indiana statute violates the First Amendment. Section 2.5 was added to the Indiana Code in 1997 in response to *McIntyre* and the decision of the United States District Court for the Southern District in *Stewart v. Taylor*, 953 F.Supp. 1047 (S.D.Ind.1997). Previous versions of the Indiana Election Laws had, like the Ohio statute, applied to both candidate elections and votes on public questions, but Section 2.5 is limited to candidate elections. Before its 1997 revision, the Indiana disclaimer requirement had none of the exemptions found in subsection 2.5(a), which now exempts small direct mailings [11] and communications with regard to public questions,[12] among other things.

*McIntyre* dealt with leafleting in a local referendum. We think somewhat different considerations apply in evaluating a disclaimer requirement in advertising in candidate elections. Indeed, in *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978), the Supreme Court expressly noted that although corruption concerns were a compelling state interest in candidate elections, they were not significant in the context of a referendum. *Id.* at 790, 98 S.Ct. 1407. *McIntyre* itself pointed out that in candidate elections the state "can identify a compelling state interest in avoiding the corruption that might result from campaign expenditures." *McIntyre*, 514 U.S. at 356, 115 S.Ct. 1511. The state has a legitimate concern that anonymous campaign support will become a quid for the quo of post election largesse. *Id.: see also Citizens Against Rent Control v. City of Berkeley*, 454 U.S. 290, 297, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981). Thus, *McIntyre* expressly noted that a "more narrowly drawn statute" might pass constitutional muster. *McIntyre*, 514 U.S. at 356, 115 S.Ct. 1511.

In *McIntyre*, Justice Ginsburg, concurring separately, expressly noted that the Supreme Court did "not thereby hold that the State may not in other, larger circumstances require the speaker to disclose its interest by disclosing its identity." *McIntyre*, 514 U.S. at 358, 115 S.Ct. 1511. Four years later, in *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999), Justice Ginsburg wrote for a five-justice majority that struck down some aspects of Colorado's regulation of solicitors in petition drives to place an issue on the ballot in a referendum. Once again the Court noted the distinction between candidate elections and referenda. *Id.* at 203, 119 S.Ct. 636. The majority found unconstitutional a requirement that solicitors wear badges with their names. But even in a referendum the majority found constitutional the require-

---

**11.** Section 2.5(a)(9) exempts mailings of up to 100 pieces of "mail" that are "substantially similar." We take "mailing" and "mail" to include any form of delivery of any written material, including personal delivery or use of some service other than use of the United States Postal Service. Reading the exemption as limited to materials distributed through the U.S. mail would impose arbitrary and indeed unconstitutional conditions on the exemption in violation of the basic equal protection doctrines invoked by both parties.

**12.** Section 2.5(a)(2). The web site referred to by the Seventh Circuit in *Majors*, 317 F.3d at 721, *www.in.gov/sos/pdfs/Disclaim.pdf* (Revised May 2002), is incorrect to the extent it suggests that all of the matters discussed apply equally to both candidate and public question elections. Although many parts of the Indiana Election Laws do apply to political question elections, Indiana Code section 3–9–3–2.5 does not by virtue of Section 2.5(a)(2).

ment that a public affidavit disclose the name and address of the solicitor. A post-solicitation affidavit did not expose the solicitor to the risk of intimidation that an identifying badge presented in a face-to-face encounter with potential voters. The affidavit was thus "the type of regulation for which *McIntyre* left room." *Id.* at 200, 119 S.Ct. 636.

We think there is a very strong state policy reflected in the 1997 amendment. It was an obvious effort to tailor a more narrowly drawn statute that would serve core state interests in the integrity of candidate races while avoiding the concerns that resulted in the invalidation of the Ohio statute. We also think that the distinctions between Ohio's statute and Indiana's revised version are substantial. The most important of these are that Indiana's law permits some individual pamphleteering and applies only to candidate elections.

The Supreme Court in *McIntyre* noted some, but not all of the differences for these purposes between issue elections and candidate elections. The Supreme Court pointed out the State's proper concern for the potential of election corruption through anonymous candidate support. This interest was identified as "on a different footing" from the mere desire for more complete information. *McIntyre* discussed this state interest largely as concern for election finance violations. In distinguishing the Ohio statute from the interests validated in federal campaign finance law in *Buckley v. Valeo*,[13] the Court identified the "compelling state interest in avoiding the corruption that might result from campaign expenditures." *McIntyre*, 514 U.S. at 356, 115 S.Ct. 1511.

Deterrence of corruption in candidate elections was first identified as a compelling government interest in *Buckley v. Va-*leo, which found that concern sufficient to justify federal election law restrictions on campaign contributions and the requirement of disclosure of contributors. *Buckley*, 424 U.S. at 66, 96 S.Ct. 612. As *Buckley* noted, the anonymous advertisement may be a surreptitious campaign contribution violation. *Id.* at 81, 96 S.Ct. 612. But in addition to concern for outright campaign finance violations and quid pro quo corruption, we think there is also a related but very important state interest in the integrity of public statements in candidate elections that differs from elections in which public questions are put to voters. Several potential abuses are presented by anonymous advertising in a candidate race. Anonymous statements about candidates for public office, even if true, can be very damaging, particularly if launched in the waning days of an election when it may be difficult or even impossible to achieve broad communication of any response. Indiana saw such an attack in the 2000 election when one candidate for attorney general was described in ads by a third-party organization as one who represented convicted drug dealers. This may have been a true statement, but it was an attack that the candidate's opponent disclaimed and disavowed. Its effect was presumably mitigated by the disclosure of the source in compliance with Indiana law. At least the voters could see who was making this claim, and form an assessment as to what its agenda was likely to be. They could then form their own views as to whether the candidate's having served as defense attorney in a case that resulted in conviction for dealing had anything at all to do with the motivation to defeat the candidate. This example of a well-funded interest group taking out advertisements to run a statewide media blitz shortly before an election is a far cry from the "modest

13. 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659     (1976).

resources" of Mrs. McIntyre mustered to oppose her school levy.

There is a second concern with anonymous ads in candidate elections. Charges can be leveled that no candidate would make because the claims would be deemed irresponsible, or would generate support from some groups, but a backlash from others. Anonymity permits personal charges to be leveled at one candidate that may be equally true of another. The voters have redress at the polls if a candidate, the candidate's committee, or a political party engages in irresponsible campaigning. If an identified third party wishes to sling some mud, there is still no practical remedy against the source, but at least the voters can evaluate the claim in light of its source.

Finally, in a candidate election, anonymous advertising permits a candidate to run on an issue without espousing it. By tacit agreement or even without implicit support from the candidate, the anonymous supporter can challenge an opponent's position on a given issue without putting the candidate's position in play. Several pernicious results occur. The candidate may not differ from the views that are being attacked, but does not need to declare a position. Or the candidate may have unspoken ties or obligations to groups whose agendas are well known, but who choose to fund advertising on completely unrelated issues. Only the disclosure of the identity of the funding agency prevents this.

For all of these reasons, we are not persuaded that Section 2.5 as written violates the First Amendment on its face, though one can conceive of some applications that might be invalid. As *McIntyre*

and *Talley* make clear, to require identification of the source is to burden the core value of free speech. But in a candidate election, there is a powerful countervailing consideration in the State's and the public's interest in election integrity. That interest extends beyond controlling direct corruption to minimizing damage to the integrity of the dynamic and multifaceted marketplace of ideas that drives a candidate election.

We think the 1997 amendment represented a very clear statement by the General Assembly that it regarded campaign disclosure as important. As a matter of separation of powers, we think setting that priority is well within the purview of the legislative body as an expression of state policy. If we construe the statute as the State suggests, we agree it removes most doubt as to the constitutionality of the statute, but we think it also eliminates most of what the statute was seeking to accomplish. In practice we do not have candidates or committees taking out anonymous advertising. It may be the deterrent effect of the law, but it also seems that anonymous advertising by a candidate would be a very high-risk strategy. If a message is such that the candidate would not be willing to be identified with it, presumably if its authorship leaked the effect of the leak would be to brand the candidate a sneak as well as a fool. We think the statute is primarily concerned with anonymous advertising by third parties. Limiting its identification to candidates and committees would free up the very actors the law was written to curtail. State and federal courts have held a variety of views on issues similar, if not identical, to the constitutional claims presented here.[14] We think the Indiana statute is

---

14. *Compare Cal. Pro–Life Council, Inc. v. Getman*, 328 F.3d 1088, 1107 (9th Cir.2003); *FEC v. Public Citizen*, 268 F.3d 1283, 1285 (11th Cir.2001); *Ky. Right to Life v. Terry*, 108 F.3d 637, 648 (6th Cir.1997); *FEC v. Survival Educ. Fund, Inc.*, 65 F.3d 285, 298 (2d. Cir.

clear and we do not believe that current decisions of the Supreme Court of the United States compel the conclusion that the statute as we construe it is invalid. Accordingly, we answer the Seventh Circuit's question as follows:

> The term "person" in Indiana Code section 3–9–3–2.5(b) and (d) is not limited to candidates, authorized political committees or subcommittees of candidates, and the agents of such committees or subcommittees. Rather, it includes any individual or organization.

■ Finally, the plaintiffs invite us to invalidate the statute on Indiana Constitutional grounds, in effect responding to the Seventh Circuit with "never mind, the statute about which you inquire is void." The plaintiffs note authority that an ambiguous statute should be interpreted in such a manner as to preserve its constitutionality. From this they draw the broader principle that the court should always consider the constitutional implications of a statute and should invalidate a statute if it finds it unconstitutional. This seems quite a stretch to us, but we need not resolve that question because the plaintiffs' contention is more easily disposed of. No state constitutional issue was presented in the district court, and we are not asked by the Seventh Circuit whether the statute runs afoul of either the state or federal constitution. We have no record of the facts of this case before us, and no basis to evaluate whether other grounds may render consideration of the broad state constitutional issue unnecessary. *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001). Neither the state nor the amicus has addressed any state constitutional issue. Under these circumstances, we will not reach out to answer a question we are not asked.

DICKSON, SULLIVAN, and RUCKER, JJ., concur.

SHEPARD, C.J., concurs with separate opinion in which DICKSON, J., joins.

### Appendix

Ind.Code § 3–9–3–2.5 (Supp.2001).

(a) This section does not apply to any of the following:

(1) A communication relating to an election to a federal office.

(2) A communication relating to the outcome of a public question.

(3) A communication described by this section in a medium regulated by federal law to the extent that federal law regulates the appearance, content, or placement of the communication in the medium.

(4) Bumper stickers, pins, buttons, pens, and similar small items upon which the disclaimer required by this section cannot be conveniently printed.

(5) Skywriting, water towers, wearing apparel, or other means of displaying an advertisement on which the inclusion of a disclaimer would be impracticable.

---

1995); *McConnell v. FEC*, 251 F.Supp.2d 176 (D.D.C. 2003); *Seymour v. Elections Enforcement Comm'n*, 255 Conn. 78, 762 A.2d 880, 892–94 (2000); *Doe v. Mortham*, 708 So.2d 929, 931–35 (Fla.1998); *with Citizens for Responsible Gov't State PAC v. Davidson*, 236 F.3d 1174, 1200 (10th Cir.2000); *Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 392 (2d Cir.2000); *Wilson v. Stocker*, 819 F.2d 943, 950 (10th Cir.1987); *N.C. Right to Life,* *Inc. v. Leake*, 108 F.Supp.2d 498, 510 (E.D.N.C.2000); *Ark. Right to Life State PAC v. Butler*, 29 F.Supp.2d 540, 550 (W.D.Ark. 1998); *Stewart*, 953 F.Supp. at 1055; *W. Va. for Life, Inc. v. Smith*, 960 F.Supp. 1036, 1042 (S.D.W.Va.1996); *Doe v. Texas*, —— S.W.3d ——, ——, 2003 WL 21077961, 2003 Tex. Crim.App. LEXIS 88 at * 14 (Tex.Crim.App. May 14, 2003).

(6) Checks, receipts, and similar items of minimal value that do not contain a political message and are used for purely administrative purposes.

(7) A communication by a political action committee organized and controlled by a corporation soliciting contributions to the political action committee by the stockholders, executives, or employees of the corporation and the families of those individuals.

(8) A communication by a political action committee organized and controlled by a labor organization soliciting contributions to the political action committee by the members or executive personnel of the labor organization and the families of those individuals.

(9) A direct mailing of one hundred (100) or less substantially similar pieces of mail.

(b) This section applies whenever a person:

(1) makes an expenditure for the purpose of financing communications expressly advocating the election or defeat of a clearly identified candidate; or

(2) solicits a contribution; through a newspaper, a magazine, an outdoor advertising facility, a poster, a yard sign, a direct mailing, or any other type of general public political advertising.

(c) For purposes of this section, a candidate is clearly identified if any of the following apply:

(1) The name of the candidate involved appears.

(2) A photograph or drawing of the candidate appears.

(3) The identity of the candidate is apparent by unambiguous reference.

(d) A communication described in subsection (b) must contain a disclaimer that appears and is presented in a clear and conspicuous manner to give the reader or observer adequate notice of the identity of persons who paid for and, when required, who authorized the communication. A disclaimer does not comply with this section if the disclaimer is difficult to read or if the placement of the disclaimer is easily overlooked.

(e) A communication that would require a disclaimer if distributed separately must contain the required disclaimer if included in a package of materials.

(f) This subsection does not apply to a communication, such as a billboard, that contains only a front face. The disclaimer need not appear on the front or cover page of the communication if the disclaimer appears within the communication.

(g) Except as provided in subsection (h), a communication described in subsection (b) must satisfy one (1) of the following:

(1) If the communication is paid for and authorized by:

(A) a candidate;

(B) an authorized political committee of a candidate; or

(C) the committee's agents;

the communication must clearly state that the communication has been paid for by the authorized political committee.

(2) If the communication is paid for by other persons but authorized by:

(A) a candidate;

(B) an authorized political committee of a candidate; or

(C) the committee's agents;

the communication must clearly state that the communication is paid for by the other persons and authorized by the authorized political committee.

(3) If the communication is not authorized by:

(A) a candidate;

(B) an authorized political committee of a candidate; or

(C) the committee's agents;

the communication must clearly state the name of the person who paid for the communication and state that the communication is not authorized by any candidate or candidate's committee.

(4) If the communication is a solicitation directed to the general public on behalf of a political committee that is not a candidate's committee, the solicitation must clearly state the full name of the person who paid for the communication.

(h) A communication by a regular party committee consisting of:

(1) a printed slate card, a sample ballot, or other printed listing of three (3) or more candidates for public office at an election;

(2) campaign materials such as handbills, brochures, posters, party tabloids or newsletters, and yard signs distributed by volunteers and used by the regular party committee in connection with volunteer activities on behalf of any nominee of the party; or

(3) materials distributed by volunteers as part of the regular party's voter registration or get-out-the-vote efforts;

must clearly state the name of the person who paid for the communication but is not required to state that the communication is authorized by any candidate or committee.

SHEPARD, Chief Justice, concurring.

I join fully in the Court's opinion, and write separately to address a point ably lifted up by the lawyers for Common Cause of Indiana and the Brennan Center for Justice.

The device of certifying questions of state law that are central to a case being litigated in federal court is productive for state and federal tribunals alike. Knowing that our federal colleagues do not make these referrals casually, we have accepted every certification from our District Courts and the Seventh Circuit, as best I can recall. I expect that we will continue to do so.

Still, the mechanism has its limitations. As amici point out, the questions necessarily come in rather abstract form. We answer a question of law, rather than resolve a case. And, of course, facts matter a great deal in the work judges customarily perform.

Here, for example, the statute in question looks very different when one contemplates a lone pamphleteer, some latter-day Thomas Paine, than it does as applied to a regular party candidate.

This problem of abstraction is especially troublesome when the question at hand is, say, one of state constitutional law, or, as today, a statutory question with palpable constitutional implications. On such occasions, it seems to me, we state judges must be especially mindful of the jurisprudential rules we would employ if the full case were pending for resolution in state court—like avoidance of avoidable constitutional declarations.

We have brushed up against such considerations in the present case, but the language and statutory framework of the law under examination have so strongly suggested an answer that fancier footwork has been unnecessary.

DICKSON, J., joins.