John DOE, Appellant,

v.

The STATE of Texas.

No. 254–02.

Court of Criminal Appeals of Texas,
En Banc.

May 14, 2003.

Eric V. Moye & George Milner, Dallas, for Appellant.

K. Jefferson Bray, Asst. DA, Dallas, Matthew Paul, State's Atty., Austin, for State.

## OPINION

JOHNSON, J., delivered the opinion of the Court in which MEYERS, PRICE, KEASLER, HERVEY, and COCHRAN, J.J., joined.

We granted the state's Petition for Discretionary Review in this case to determine whether § 255.001 of the Texas Election Code[1] passes constitutional muster. We hold that it does not.

---

1. § 255.001 states:

(a) A person may not knowingly enter into a contract or other agreement to print, publish, or broadcast political advertising that does not indicate in the advertising:

(1) that it is political advertising;

(2) the full name of either the individual who personally entered into the contract or agreement with the printer, publisher, or broadcaster or the person that individual represents; and

(3) in the case of advertising that is printed or published, the address of either the (cont.) individual who personally entered into the agreement with the printer or publisher or the person that individual represents.

(b) This section does not apply to tickets or invitations to political fund-raising events or to campaign buttons, pins, hats, or similar campaign materials.

(c) A person who violates this section commits an offense. An offense under this section is a Class A misdemeanor.

During a campaign for Dallas municipal offices, appellant created and circulated a political flyer that described an incumbent candidate for the Dallas City Council as "Pinocchio." The flyer was published anonymously and distributed by a publishing company through a bulk mailing. After the election, the Dallas County District Attorney's office received a complaint pointing out that the flier, contrary to the requirements of § 255.001, did not contain the name and address of the person contracting for its publication. Ultimately, appellant was indicted for violating § 255.001. In response to the indictment, appellant filed a motion to set it aside, contending that § 255.001 was unconstitutional because it sought to regulate core political speech and was not narrowly tailored to serve an overriding state interest.

Appellant is correct. We hold that § 255.001, on its face, violates the First Amendment to the United States Constitution and affirm the court of appeals' opinion upholding the trial court's dismissal of the charges against appellant.[2]

The United States Supreme Court has long held that the distribution of political leaflets that advocate controversial viewpoints is the essence of First Amendment expression. *See e.g. International Society for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992); *Lovell v. City of Griffin,* 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938). In 1995, the Supreme Court held that no form of speech is entitled to greater constitutional protection than political speech and, when a law burdens core political speech, "exacting scrutiny" must be applied and the statute may be upheld only if it is narrowly tailored to serve an overriding state interest. *McIntyre v. Ohio Elections Com'n,* 514 U.S. 334, 347, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995).[3] The Supreme Court also held that compelled identification of the author against that person's will is particularly intrusive, as it reveals unmistakably the content of his or her thoughts on a controversial issue. *Id.* at 355, 115 S.Ct. 1511.

The Texas Legislature has adopted laws requiring disclosure to be made in political advertisements. Under § 255.001, any person who enters into a contract or other agreement for the printing, publication, or broadcasting of a political advertisement must identify, within the advertisement, the person who made the contract or the person he represents. Political advertising includes any communication supporting or opposing a candidate for public office or an office of a political party. Tex. Elec. Code § 251.001(16) (2001). The disclosure requirement applies to all political advertisements whether published in the print media, broadcast by radio or television, or appearing in a pamphlet, circular, flier, or other similar form of written communication. *Id.*

Although the language of § 255.001 speaks in terms of "contracts or other agreements," the substance of the statute, by requiring the author of an advertisement to identify himself, regulates political advertising and, therefore, the content of core political speech. *See McIntyre,* 514 U.S. at 347, 115 S.Ct. 1511. Statutes that regulate the mechanics of the electoral process are subject to a lower

---

**2.** We find the court of appeals opinion to be well written and well reasoned. We have adopted much of the lower court's opinion, written by Justice Morris.

**3.** In *McIntyre,* the Court found an Ohio statute almost identical to the one at issue here unconstitutional because the state failed to show that its interest in preventing the misuse of anonymous election-related speech justified a prohibition of all uses of that speech.

level of scrutiny than statutes that regulate constitutionally protected speech because they regulate only the election process, not the content of political speech. *McIntyre* at 345, 115 S.Ct. 1511. It is the substance of the statement being published that determines whether the statute applies, and it is the content of the statement that must be augmented with the name and address of the speaker.

■ The state argues that § 255.001 should be analyzed under a lower level of scrutiny because it does not directly forbid speech, but merely prohibits commercial agreements to create and broadcast anonymous political advertising. However, a statute that regulates political speech does not have to ban speech to be subject to exacting scrutiny.

■ Freedom of speech includes the right to engage in the dissemination of ideas without being publicly identified. *Talley v. California*, 362 U.S. 60, 65, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960). To comply with § 255.001, however, a person must add personal information to the text of his statement. A law mandating that additions be made to the text of a statement curtails the author's freedom to omit any information he chooses and violates the First Amendment. *Talley*, 362 U.S. at 64, 80 S.Ct. 536. Anonymity allows individuals to discuss matters of public importance without fear of reprisal. *Buckley v. Am. Constitutional Law Foundation*, 525 U.S. 182, 198–99, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999). The ability of an author or other sponsoring party to remain anonymous while engaging in political speech is a right that may be burdened only in the face of the most compelling state interest. *McIntyre*, 514 U.S. at 341–42, 115 S.Ct. 1511.

■ Because it burdens core political speech, § 255.001 is subject to exacting

scrutiny and can be upheld only if it is narrowly tailored to serve an overriding state interest. *Id.* at 347, 115 S.Ct. 1511. Further, the state must do more than simply assert that it has an interest; it must also demonstrate that there are actual problems that arise when persons enter into agreements to print, publish or broadcast political advertising without identifying themselves. *United States v. National Treasury Employees Union*, 513 U.S. 454, 475, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995); *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 664, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994) ("When the Government defends a regulation on speech ... it must do more than simply 'posit the existence of the disease to be cured.' ... It must demonstrate that the recited harms are real, ... and that the regulation will in fact alleviate these harms in a direct and material way.")

Here, the state has identified three interests by which it seeks to justify the requirements imposed by § 255.001: 1) deterring and punishing political corruption; 2) notifying the public of any allegiance a particular candidate might have toward the publisher of the communication; and 3) providing a method of detecting those expenditures that appear to be from an individual, but really come from political action committees or corporations.

■ It has been consistently recognized that there must be substantial regulation of elections if they are to be fair, honest, and orderly. *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358, 117 S.Ct. 1364, 137 L.Ed.2d 589 (1997); *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). The government's interest in preventing and detecting corruption in campaign finances may be of sufficient importance to outweigh possible infringement on constitutional rights. *Buckley v. Valeo*, 424 U.S. 1, 66–7, 96 S.Ct.

612, 46 L.Ed.2d 659 (1976). The state's interests in this case, therefore, are compelling, but this is only half of the analysis. The burden placed on the right to freedom of speech under § 255.001 must also be sufficiently narrow and must impose as few restrictions as possible to meet the state's goals.

In *McIntyre v. Ohio Elections Commission,* the Supreme Court addressed an Ohio law mandating that any published statement designed to influence voters in an election with respect to a candidate or issue must contain the name and address of the person or organization responsible for its issuance. *McIntyre,* 514 U.S. at 357, 115 S.Ct. 1511. The Court held the statute unconstitutional because the state's interest in providing voters with additional relevant information did not justify the requirement that a writer make statements or disclosures he would have otherwise omitted. *Id.* The Court also held that Ohio's prohibition against anonymous political statements was not its principal weapon against fraud, but was merely a deterrent and aid to enforcement. *Id.* at 350–51, 115 S.Ct. 1511. The ancillary benefits to the state did not justify the broad reach of the statute. *Id.* at 350, 115 S.Ct. 1511.

■ Here, the court of appeals was correct in holding that the Supreme Court's analysis in *McIntyre* applies with equal force to § 255.001.[4] The state contends that § 255.001 serves a compelling interest in deterring and punishing political corruption, but it did not specify in the court of appeals, nor does it specify here what types of overriding political corruption § 255.001 is intended to address. Nothing in § 255.001 limits its application to wrongful actions such as the publications of statements that are false, misleading,

fraudulent, or libelous. The statute applies with equal force to all political advertisements regardless of their accuracy or veracity. Further, extant state laws deter false and fraudulent statements through recognized tort claims. *See e.g.* TEX. CIV. PRAC. & REM.CODE § 73.001 (2002); TEX. TORTS & REM. § 52.03 (2002). Section 255.001 merely provides a deterrent and an aid to law enforcement and, therefore, cannot justify such a sweeping prohibition on anonymous political speech. *McIntyre,* at 350, 115 S.Ct. 1511.

To the extent that § 255.001 is aimed at abuse or corruption in campaign financing, the state's interests are already addressed by the Election Code's numerous restrictions on contributions and expenditures and its extensive campaign financing reporting requirements. *See e.g.* TEX. ELEC. CODE chs. 253–54 (2001). Campaign finance laws already require accountability and serve to inhibit campaign finance abuse or corruption. Although the identification of a person responsible for a political advertisement may help to ensure that contributions and expenditures are accurately reported, this ancillary benefit cannot justify § 255.001's sweeping infringement on protected political speech.

Finally, the state's interest in ensuring that political advertising is attributed to its originating and actual source is already considered. Texas Election Code § 255.004 provides that it is an offense to agree to publish a political advertisement that "purports to emanate from a source other than its true source." TEX. ELEC. CODE § 255.004 (2001). The Code also prohibits contributions or expenditures in another's name unless the person discloses in writing to the recipient or beneficiary the name and address of the person actual-

---

4.  In fact, Justice Scalia's dissent in *McIntyre* noted that the majority opinion affected similar laws in twenty-four states including Texas Election Code § 255.001.

ly making the contribution. TEX. ELEC. CODE § 253.001 (2001).

■ The second interest urged by the state is notifying the public of a candidate's possible allegiances or *quid pro quo* agreements. While we agree that this is a compelling state interest, § 255.001 does little to enhance protections already available under the Election Code. *See e.g.* TEX. ELEC.CODE chs. 253–54 (2001). Campaign finance reports are required by the state, are preserved for two years, and are open to public inspection. *Id.;* TEX. ELEC.CODE §§ 254.040–0401. These reports directly inform the public of a candidate's possible allegiances while employing a disclosure requirement less burdensome on individual rights. *Buckley v. Valeo* 424 U.S. 1, 66–68, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *McIntyre,* 514 U.S. at 355, 115 S.Ct. 1511.

Finally, the state argues that § 255.001 provides a method of detecting expenditures that are disguised and/or unreported or that appear to be made by individuals when, in fact, they are made by political committees or corporations. Again, there are alternative, more effective ways of monitoring this issue. Political committees are required to report their expenditures. TEX. ELEC.CODE §§ 254.121–163. Corporations are prohibited from making contributions to, or expenditures on behalf of, a specific candidate. *Id.* Thus, the statutory reporting requirements and prohibitions on expenditures are the principal weapon against misleading activities, not § 255.001. The state asserts that § 255.001 prevents candidates from exceeding contribution limits by spending funds on anonymous political advertising. Once again, this is simply an aid to the enforcement of other statutes and cannot not preserve the constitutionality of § 255.001. *McIntyre* at 350, 115 S.Ct. 1511.

Lastly, the state urges this Court to hold that § 255.001 is more narrowly tailored than the statute in *McIntyre* because it regulates only agreements between two or more people. The state claims that this narrowing makes the holding of *McIntyre* inapplicable. While the requirements of § 255.001 arguably may be avoided by self-publication of a political advertisement, requiring such avoidance severely limits the opportunity to engage meaningfully in the anonymous and constitutionally protected dissemination of political ideas to a numerically insignificant portion of the electorate.

Moreover, should a person choose to distribute his political advertisement personally, he will likely disclose his connection to the advertisement in the process. At best, the statute prevents all but the most resourceful individuals from engaging in publication of political advertising without revealing their identity. Further, limiting anonymity to individuals acting alone also prevents groups who espouse political viewpoints from publishing their message. This flies in the face of the Supreme Court's holding in *Talley,* 362 U.S. at 64, 80 S.Ct. 536.

We conclude that § 255.001 is not sufficiently narrowly tailored to serve an overriding state interest without placing an undue burden on constitutionally protected political free speech. The statute's broad proscription on anonymous political speech reaches well beyond the conduct asserted by the state to be the target of the statute. To the extent that § 255.001 has an impact on the targeted conduct, it is only as a deterrent and aid to the enforcement of other statutes; this is simply not permitted under the First Amendment. A state cannot significantly infringe upon an individual's freedom of speech to obtain the ancillary benefit of detecting violations of other laws. Therefore, we hold that § 255.001 is unconstitutional on its face.

We affirm the judgment of the court of appeals.

KELLER, P.J., filed a concurring opinion.

HOLCOMB, J., filed a dissenting opinion.

WOMACK, J., dissented.

KELLER, P.J., filed a concurring opinion.

Like Judge Holcomb (and Chief Justice Rehnquist, Justice Scalia, and Justice Thomas), I disagree with the Supreme Court's analysis in *McIntyre*.[1] And while *McIntyre* would nevertheless be determinative in this case if Texas's statute were sufficiently comparable to Ohio's, I believe that the differences in the two are such that *McIntyre* does not compel the conclusion that Gov't.Code Section 255.001 violates the Constitution.

The primary difference between the Ohio and Texas statutes is that the Ohio statute required disclosure of the name of the author of campaign literature and the Texas statute does not. Gov't Code Section 255.001 allows the author of political advertising to remain anonymous as long as the person contracting with the printer identifies himself.

In his concurring opinion in *McIntyre*, Justice Thomas eschewed the Court's analysis as being "largely unconnected to the Constitution's text or history."[2] He determined nevertheless that the phrase "freedom of speech, or of the press," as originally understood, protected anonymous political leafletting.[3] After review-ing the weight of the historical evidence, he concluded that, "the Framers understood the First Amendment to protect an author's right to express his thoughts on political candidates or issues in an anonymous fashion."[4] I agree with Justice Thomas's method, and I agree with his conclusion. For reasons other than those articulated by the Court, then, I would hold that Section 255.001 violates the Constitution.

I concur only in the judgment.

HOLCOMB, J., filed a dissenting opinion.

If the issue in this case were whether section 255.001 of the Texas Election Code (the Texas statute) was unconstitutional as applied to John Doe, it would be an easier case. I think it is clear that in this case the State could validly prohibit John Doe from circulating the Pinocchio flier without the required disclosure.

However, the issue in this case is whether the statute is impermissibly overbroad, facially unconstitutional, and thus void. Although the issue in this case requires a more abstract analysis, I think the result, finding the statute constitutional, should be the same.

While conceding the State's interests in this case are compelling, the majority concludes that the statute is unconstitutional on its face because it is "not sufficiently narrowly tailored to serve an overriding state interest without placing an undue burden on constitutionally protected political free speech." Because I disagree, I must respectfully dissent.

---

1. *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995).

2. *Id.* at p. 371, 115 S.Ct. 1511 (Thomas, J. concurring).

3. *Id.* at p. 359, 115 S.Ct. 1511 (Thomas, J. concurring).

4. *Id.* at p. 371, 115 S.Ct. 1511 (Thomas, J. concurring).

An appropriate analysis begins by recognizing that the Texas statute is presumptively constitutional. *See Ex parte Granviel,* 561 S.W.2d 503, 511 (Tex.Crim. App.1978). The majority relies on the reasoning in *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995)(holding unconstitutional an Ohio statute prohibiting all anonymous political advertisement because it was not sufficiently tailored to serve overriding state interests.). Although I agree with Justice Scalia that *McIntyre* was wrongly decided, I recognize that the decision is binding on this Court. However, I do not believe the majority's reasoning in *McIntyre* requires us to find the Texas statute unconstitutional.

First, because the Texas statute regulates the electoral process and interdependent, commercial activity, the case should be controlled not by the holding in *McIntyre,* but by the United States Supreme Court's holding in *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976)(per curiam)(upholding certain provisions of the Federal Election Act requiring private individuals to report certain expenditures in a candidate election), and we should find that the statute is a constitutional regulation of the electoral process.

Second, the Texas statute materially differs from the Ohio statute at issue in *McIntyre* in ways that make it sufficiently tailored to serve the interests the State specifically advances. The Ohio statute addressed in *McIntyre* prohibited all anonymous political advertisement. The Texas statute prohibits anonymous political advertisement only where it was printed, published or broadcast pursuant to a contract or other agreement. Tex. Elec.Code Ann. 255.01 (Vernon Supp.2003). The *McIntyre* majority recognized that a more limited identification requirement addressing different circumstances might be justified by the State's interest in protecting an election process. *McIntyre,* 514 U.S. at 353, 115 S.Ct. 1511. I believe the Texas statute falls within the realm of statutes the majority recognized would be so justified and thus be found to be constitutional.

The majority fails to recognize that the political corruption the statute was intended to deter does not necessarily involve actionable claims and that therefore, the statute is not merely an aid to law enforcement. The Texas statute protects the integrity of the election process by promoting truthfulness in campaign advertising; by fostering fairness and civility in election campaigns; and by increasing the fund of information available to the electorate. *See generally McIntyre,* 514 U.S. at 371–85, 115 S.Ct. 1511 (Scalia, J., dissenting). While protecting such compelling state interests, the statute is narrowly tailored not to burden or inhibit individuals' independent communications, which embody the essence of the First Amendment, such as the fliers that McIntyre independently paid for out of her own meager resources and distributed. *Id.* at 347, 115 S.Ct. 1511.

In recognizing that it is an independent offense to agree to publish a political advertisement that purports to emanate from a source other than its true source, the majority fails to address the state's true concern, not regarding false identification of the source, but regarding the intended erroneous assumptions that may be made regarding the source when the source is not identified at all. Such misleading could be accomplished without including actionable misrepresentations within the advertisement.

Turning to address the burden the Texas statute imposes on political speech, the majority seems to argue that the Texas statute will inhibit the McIntyres of the world from disseminating their fliers.

First, there are ways available to a significant portion of the electorate to anonymously disseminate political ideas to a significant portion of the electorate. For example, one may voice political ideas as an anonymous source in the news media by communicating confidentially with a reporter or writing letters to the editor, or one may send targeted mailing and emails or post messages on the internet message boards and chat rooms, and so forth.

Second, tailoring the statute to prohibit only political advertisements printed, published, or broadcast pursuant to contracts or agreements between two or more people regulates those with the most resources, those most likely to be subject to the campaign reporting regulations, leaving those with little resources to the methods they would use to disseminate their political ideas were the statute not in place.

Additionally, the majority fails to address the effect of the statute allowing an individual to remain anonymous by creating an organization as the "person" represented or by using an intermediary and disclosing only the information of the agent entering into the contract.[1]

It is conceivable that the phrase "contract or other agreement to print, publish, or broadcast" in the Texas statute could be construed to regulate political advertisements copied by individuals at copy centers pursuant to an agreement that the individual may use the copier to print the advertisements for a price. See Tex. Elec. Code. Ann. 255.001 (Vernon Supp.2003). The statute could be construed to regulate

all political advertisements distributed by an individual through the mail pursuant to an agreement that the mail service deliver the advertisements to the addressees. It could be construed to regulate any political advertisement delivered by email or posted on the internet pursuant to an agreement with an email provider or host to provide such services. It could also be construed to regulate political advertisements placed on car windshields pursuant to an agreement with a friend to print the advertisements on the friend's home computer and help distribute them. However, all of these examples would require courts to embrace an absurd construction of the statute, clearly beyond the intent of the legislature. Such unintended applications can be sufficiently controlled through our ability to determine when a statute is unconstitutional as applied. Cf. *Doe v. Mortham*, 708 So.2d 929, 930 n. 3, 934–35 (Fla.1998)(upholding the constitutionality of a political advertisement disclosure statute by construing the statute as not applying to independent conduct such as McIntyre's, and noting the ability of the court to address statutory infirmities on an "as applied basis.")

Because I would find the Texas statute sufficiently tailored to serve overriding state interests and thus constitutional, I respectfully dissent.

---

**1.** Tex. Elec.Code Ann. 255.001(a)(2) & (3) read:

    (a)(2) the full name of either the individual who personally entered into the contract or agreement with the printer, publisher, or broadcaster or the person that individual represents; and

    (3) in the case of advertising that is printed or published, the address of either the individual who personally entered into the agreement with the printer or publisher or the person that individual represents.