

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-16-00188-CR

Pablo **ALFARO-JIMENEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2014CR9248
Honorable Jefferson Moore, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Marialyn Barnard, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  August 2, 2017

AFFIRMED

On December 9, 2015, a Bexar County jury returned a guilty verdict against Appellant

Pablo Alfaro-Jimenez on one misdemeanor count of tampering with a government document, a

Social Security card.  The trial court subsequently sentenced Alfaro-Jimenez to one-year

confinement in the Bexar County Jail, suspended and probated for a period of two years, and a

$1,500.00 fine.  On appeal, Alfaro-Jimenez contends: (1) the evidence is insufficient to support

the jury's verdict; (2) the trial court erred denying Alfaro-Jimenez's motion to suppress; and (3)

Texas Penal Code section 37.10, the statute under which Alfaro-Jimenez was convicted, is unconstitutionally vague. *See* TEX. PENAL CODE ANN. § 37.10 (West 2016).

### FACTUAL AND PROCEDURAL BACKGROUND

On July 10, 2014, San Antonio Police Officer Edward Rodriguez was dispatched for a domestic disturbance. The complainant told the officers that her ex-boyfriend, identified as Juan Alberto Torres Landa, was beating on the door, kicking the door, and threatening her. By the time officers arrived, the ex-boyfriend was gone.

After conducting an investigation, and ensuring the complainant's safety, Officer Rodriguez was leaving the premises when the ex-boyfriend approached Officer Rodriguez and requested permission to tell his version of the incident. In light of the violent allegations, the individual was handcuffed for officer safety. While attempting to identify the ex-boyfriend, Officer Rodriguez became suspicious that the ex-boyfriend's identification, specifically the Social Security card, was fraudulent.

Officer Rodriguez contacted Immigration and Customs Enforcement (ICE) and determined the name and information provided did not belong to the ex-boyfriend. The individual subsequently identified himself as Pablo Alfaro-Jimenez and Officer Rodriguez confirmed the identification through a fingerprint comparison. Appellant Alfaro-Jimenez was arrested for tampering with a government document.

A jury returned a guilty verdict against Alfaro-Jimenez and the trial court subsequently assessed punishment at one-year confinement in the Bexar County Jail, suspended and probated for a period of two years, and a $1,500.00 fine. This appeal ensued.

### MOTION TO SUPPRESS

Prior to opening statement, and outside the presence of the jury, the trial court heard testimony and arguments pertaining to Alfaro-Jimenez's motion to suppress. Asserting the officers

possessed insufficient grounds to arrest Alfaro-Jimenez, and that the search extended beyond reasonable grounds, defense counsel sought to suppress both the evidence and Alfaro-Jimenez's statements.

## A.     Standard of Review

An appellate court reviews a trial court's ruling on a motion to suppress using a bifurcated standard of review; we "'afford almost total deference to a trial court's determination of the historical facts that the record supports.'" *Montanez v. State*, 195 S.W.3d 101, 106 (Tex. Crim. App. 2006) (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)); *accord Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013).  A reviewing court must

> give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo.

*Wilson v. State*, 442 S.W.3d 779, 783 (Tex. App.—Fort Worth 2014, pet. ref'd) (citations omitted); *see also Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004).

## B.     Arguments of the Parties

Alfaro-Jimenez contends Officer Rodriguez exceeded his authority by prolonging the detention beyond the scope of his investigation and that he conducted an illegal search when he retrieved Alfaro-Jimenez's wallet without his consent.

The State counters that, based on a totality of the circumstances, Officer Rodriguez's actions constituted a reasonable investigative detention and, that during such detention, Alfaro-Jimenez provided Officer Rodriguez consent to procure Alfaro-Jimenez's identification from the wallet located in his back pocket.

**C.** **Interactions between Police Officers and Citizens**

"The Fourth Amendment protects individuals against unreasonable searches and seizures." *State v. Weaver*, 349 S.W.3d 521, 525 (Tex. Crim. App. 2011) (citing U.S. CONST. amend. IV). Importantly, however, the Fourth Amendment is not invoked simply because an officer and a person converse. *See Weaver*, 349 S.W.3d at 525. Our analysis, therefore, begins with a determination of whether Alfaro-Jimenez met his initial burden to produce some evidence that the police conducted a search or seizure without a warrant. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Only after some evidence has been presented does the burden shift to the State to establish that the warrantless search was reasonable. *Id*.

The Texas Court of Criminal Appeals addressed the interactions between officers and private citizens in *State v. Garcia-Cantu*; the court stated that "[e]ach citizen-police encounter must be factually evaluated on its own terms; there are no per se rules." *State v. Garcia–Cantu*, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008). "[T]here are three distinct types of interactions between police and citizens: (1) consensual encounters, which require no objective justification; (2) investigative detentions, which require reasonable suspicion; and (3) arrests, which require probable cause." *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011) (footnotes omitted); *accord Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010). "In assessing whether a seizure is an investigative detention or an arrest, we take an objective view of the officer's actions—'judged from the perspective of a reasonable officer at the scene, rather than with the advantage of hindsight.'" *State v. Adams*, 454 S.W.3d 38, 44 (Tex. App.—San Antonio 2014, no pet.) (quoting *Rhodes v. State*, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997)). Handcuffing alone does not necessarily transform an investigative detention into an arrest. *See State v. Sheppard*, 271 S.W.3d 281, 283 (Tex. Crim. App. 2008) ("[A] person who has been handcuffed has been 'seized' and detained under the Fourth Amendment, but he has not necessarily been 'arrested.'"); *see also*

*Rhodes*, 945 S.W.2d at 118 (concluding there is no bright-line test providing that mere handcuffing is always equivalent of arrest). "[A]llowances must be made for the fact that officers must often make quick decisions under tense, uncertain and rapidly changing circumstances." *Rhodes*, 945 S.W.2d at 118; *accord Hauer v. State*, 466 S.W.3d 886, 891 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

To establish reasonable suspicion, "an officer must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010) (quoting *United States v. Sokolow*, 490 U.S. 1, 21 (1989)). The determination must be based on common-sense judgments and rational inferences about human behavior. *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000); *see also Young v. State*, 133 S.W.3d 839, 841 (Tex. App.—El Paso 2004, no pet.). Police officers may rely on their own experience and training when making this determination. *Young*, 133 S.W.3d at 841. "The issue is 'whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.'" *Kothe v. State*, 152 S.W.3d 54, 64–65 (Tex. Crim. App. 2004) (quoting *United States v. Sharpe*, 470 U.S. 675, 685–86 (1985)).

A search conducted with a person's voluntary consent does not require a warrant. *See Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011); *Hutchins v. State*, 475 S.W.3d 496, 498 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). The State bears the burden to prove the voluntariness of consent to search by clear and convincing evidence. *See Meekins*, 340 S.W.3d at 459; *Montanez*, 195 S.W.3d at 108. "A person's consent to search can be communicated to law enforcement in a variety of ways, including by words, action, or circumstantial evidence showing implied consent." *Meekins*, 340 S.W.3d at 458 (citing *Valtierra*, 310 S.W.3d at 451–52).

**D.      Testimony Presented During the Motion to Suppress**

The only witness called to testify during the motion to suppress hearing was San Antonio Police Officer Edward Rodriguez.  The officer testified that on July 10, 2014, he responded to a domestic disturbance call alleging the complainant's ex-boyfriend was at her apartment, she was locked inside, and he was beating on the door, kicking the door, and threatening the complainant. When Officer Rodriguez and his partner arrived at the location, the complainant appeared scared and upset.  She told officers that her ex-boyfriend left the premise, and she did not "want anything to do with [him]."  Shortly thereafter, Alfaro-Jimenez walked up to Officer Rodriguez and told the officer that he "just want[ed] to set the record straight on this."  Although Alfaro-Jimenez was relatively calm at the time, based on his aggressive nature with the complainant, the officers placed Alfaro-Jimenez in handcuffs for their safety.

Alfaro-Jimenez identified himself as Juan Alberto Torres Landa.  The complainant also told the officers that Alfaro-Jimenez "may not be legal."  Officer Rodriguez requested identification and explained that they had reason to believe that he "may not be here legally." Officer Rodriguez testified that Alfaro-Jimenez

> gestured [to] his back pocket.  It's in my back pocket, right there, in his wallet.  And he gestured, like, leaning over and bending over kind of for me to reach for his wallet.  I said, Is that your wallet right there?  He said, Yeah, it's right inside there. . . . He was bending over, kind of gesturing like it's right there in my wallet.

Officer Rodriguez removed the wallet and Alfaro-Jimenez said, "My ID—open—open the wallet, my ID is in the pocket right there.  Right in there.  So he told me where it was, too."  Officer Rodriguez continued that, as he was looking for the driver's license, he came across a Mexican driver's license, permanent resident (alien) card, and a Social Security card all bearing the name Juan Alberto Torres Landa.  The officer immediately suspected something was wrong.

> When I looked at [the Social Security card], the paper was flimsier than a normal one.  The ink on it was not dark—standard dark print.  And I looked down

on the left corner of it and there was like a—like a smear from a water drop or something on it. Like ink smeared on it. So I knew then it was printed up on a printer at home or something like that. So I asked for his Social Security number and he gave me the one on the card. Actually, I don't think he remembered the Social Security number.

Pursuant to protocol, Officer Rodriguez contacted the ICE agent. After running the information through their computer system, the agent reported that the Social Security number was registered to a person from Vietnam. Based on the information received from the ICE agent, Officer Rodriguez asked Alfaro-Jimenez whether he was in the United States illegally. He answered affirmatively and Officer Rodriguez placed him under arrest for tampering with a government document.

Officer Rodriguez testified that, when asked, Alfaro-Jimenez provided his real name. After having him fingerprinted, Officer Rodriguez was able to confirm the individual's actual name was Pablo Alfaro-Jimenez.

On cross-examination, Officer Rodriguez confirmed that when an officer "walk[s] into the unknown" and there is reason to suspect that the person is violent, "he goes into handcuffs immediately for officer safety." He explained the officers could not know if the individual had a gun, knife, or other weapon. The officers also conducted a pat down to check for weapons prior to placing him in handcuffs.

Officer Rodriguez explained the officers ask everyone for identification. "That's how we get warrants, that's how we find wanted people through murder warrants, anything like that. We ID people. Our department requires us to ID people at the scene." Officer Rodriguez conceded that Alfaro-Jimenez was handcuffed when the officer requested identification and that the individual could not have reached his wallet.

Officer Rodriguez, however, was adamant that Alfaro-Jimenez told him the wallet's location and where to find the documents. According to the officer, Alfaro-Jimenez "leaned back

and said, My wallet is right there. My . . . driver's license is there in the wallet." Officer Rodriguez confirmed that he pulled the wallet out of Alfaro-Jimenez's back pocket and Alfaro-Jimenez was not free to leave at that point. The officer further explained that when he pulled out the Mexican driver's license, the Social Security card came out. "And I looked at the spread there to make sure the pictures matched." When he was comparing the pictures, he noticed the smeared ink on the Social Security card. Officer Rodriguez confirmed that he had not yet *Mirandized* Alfaro-Jimenez because he was still attempting to determine his identification.

After reviewing a video-taped recording of the incident, the trial court determined the officers possessed reasonable suspicion to detain Alfaro-Jimenez. The trial court reasoned the officers were "there for either a possible trespass or a burglary, or at least even disturbing the peace, with the testimony that the call that was in; a man trying to kick down the door, screaming and yelling. The police have a right to go out and investigate something like that." When Alfaro-Jimenez approached the officers, the officers were within their rights to determine his identity. The officers simply detained the individual; he was not placed under arrest. The trial court further found that Alfaro-Jimenez "consented for the police officer to take the wallet from his back pocket." The trial court explained,

> [i]t's hard to describe for the record, but he indicated with his head, or he was, in a sense, acting as the defendant at the time of this incident of showing that his hands were in cuffs and his head would turn and, in a sense, his chin would point towards his back pocket for me, indicating that the defendant was giving the officer the consent by showing him where the wallet was located.

While going through the wallet, the officer located what he believed to be a false government record. When the officer attempted to verify the information with the ICE agent, neither the oral identification nor the documents provided by the individual correlated to the name provided by the individual. The individual also hesitated when asked for his birthdate. Each of these incidents led to Officer Rodriguez asking whether Alfaro-Jimenez was legally in the United States. He

confirmed he was in the United States illegally and Officer Rodriguez placed him under arrest. After Alfaro-Jimenez was *Mirandized*, he continued to make spontaneous statements which further incriminated him.

The trial court partially granted Alfaro-Jimenez's motion to suppress. The trial court suppressed any statements made between the arrest and the officer's reading of Alfaro-Jimenez's *Miranda* rights, but explained that "questions and statements made after the *Miranda* statement will not be suppressed." The trial court further denied Alfaro-Jimenez's request to suppress any evidence seized from the wallet. The State agreed to have the video-tape redacted to comply with the trial court's order.

### E. Analysis

Our review questions whether, based on the totality of the circumstances, the officer's actions unduly prolonged the detention and whether such actions were a reasonable means of investigation to confirm or dispel the officer's suspicions. *See Kothe*, 152 S.W.3d at 64; *see also Perez v. State*, 818 S.W.2d 512, 517 (Tex. App.—Houston [1st Dist.] 1991, no writ) ("The propriety of the stop's duration is judged by assessing whether the police diligently pursued a means of investigation that was likely to dispel or confirm their suspicions quickly."). In a routine investigative detention, an officer may request certain information, such a driver's license, and may conduct a computer check on that information. *See Kothe*, 152 S.W.3d at 63 (citing *United States v. Brigham*, 382 F.3d 500, 512 (5th Cir. 2004) (en banc)); *see also Davis v. State*, 947 S.W.2d 240, 245 n.6 (Tex. Crim. App. 1997) (concluding it was not unreasonable for officer to temporarily detain individual to check identification and outstanding warrants).

We remain mindful of our deference to the trial court's factual determinations. *See Montanez*, 195 S.W.3d at 106. In the present case, the trial court determined Officer Rodriguez based his suspicion of possible criminal activity on statements made by the complainant—related

to the potential assault and whether Alfaro-Jimenez was legally in the United States. The officer was in a position to determine whether placing Alfaro-Jimenez in handcuffs was necessary for officer safety while he continued to investigate the complainant's allegations. Officer Rodriguez requested identification to both verify the individual's identification and to check for warrants. The trial court further found that Alfaro-Jimenez (1) provided the officer consent to retrieve the wallet from his pocket and (2) instructed the officer where his identification was located in the wallet.

Based on a review of the record, the trial court could reasonably determine that Officer Rodriguez diligently pursued a means to confirm or dispel his suspicions and the detention was not so long as to become constitutionally prohibited. *See id*. The trial court could also reasonably determine, by clear and convincing evidence, that Alfaro-Jimenez provided his consent for Officer Rodriguez to retrieve his wallet and the identification contained within the wallet. *See Meekins*, 340 S.W.3d at 460 (holding trial court's determination of voluntariness "must be accepted on appeal unless it is clearly erroneous"); *Martinez v. State*, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000) (holding that officer's testimony that consent was voluntarily given is sufficient to prove voluntariness). We, therefore, conclude the trial court did not err in denying Alfaro-Jimenez's motion to suppress.

SUFFICIENCY OF THE EVIDENCE—PRESENTMENT OF THE SOCIAL SECURITY CARD

A.     Standard of Review

In reviewing the sufficiency of the evidence, "we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011); *accord Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). "This standard recognizes the trier of fact's role as the sole judge of the weight and credibility of

the evidence. . . ." *Adames*, 353 S.W.3d at 860; *accord Gear*, 340 S.W.3d at 746. The reviewing court must also give deference to the jury's ability "'to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* (citing *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)).

We may not substitute our judgment for that of the jury by reevaluating the weight and credibility of the evidence. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). We defer to the jury's responsibility to resolve any conflicts in the evidence fairly, weigh the evidence, and draw reasonable inferences. *See Hooper*, 214 S.W.3d at 13; *King*, 29 S.W.3d at 562. The jury alone decides whether to believe eyewitness testimony, and it resolves any conflicts in the evidence. *See Hooper*, 214 S.W.3d at 15; *Young v. State*, 358 S.W.3d 790, 801 (Tex. App.— Houston [14th Dist.] 2012, pet. ref'd). In conducting a sufficiency review, "[w]e do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure that the jury reached a rational decision." *Young*, 358 S.W.3d at 801.

## B.      Arguments of the Parties

Alfaro-Jimenez contends the evidence is insufficient to support the jury's finding that he "presented" the Social Security card to the officer as required by statute. More specifically, Alfaro-Jimenez contends there is no evidence that he used, or attempted to use, the Social Security card in question. Alfaro-Jimenez also contends the evidence is insufficient to support a finding that the card in question was, in fact, a government document.

**C.     Evidence Presented at Trial**

The evidence at trial consisted of the testimony of Officer Rodriguez, Criminal Investigator Damien Reyes, and Alfaro-Jimenez. The jury also received a redacted copy of the dashboard videotape and the Social Security card in question. Because Officer Rodriguez's testimony was similar to the testimony he provided in the motion to suppress, the summary of his trial testimony is limited and includes any distinctions between the two.

*1.     San Antonio Police Officer Edward Rodriguez*

Officer Rodriguez, a thirteen-year veteran of the San Antonio Police Department, testified that he and his partner responded to a 911 call regarding a domestic disturbance. The complainant reported that her ex-boyfriend was "at the location, banging on the door, kicking on the door, screaming, yelling, [and] making threats." The complainant identified her ex-boyfriend as Juan Alberto Torres Landa. Officer Rodriguez further described the complainant as upset, crying, and that she would not exit the apartment until the officers arrived.

Officer Rodriguez explained that when they were speaking to the complainant, the ex-boyfriend, Appellant Alfaro-Jimenez, returned. She saw him and "backed off," as though she was "already afraid of him."

> from past experience in calls, something like this, the guy comes back, you know, expected, unexpected, so we immediately detain him, put him in handcuffs for officer safety. Pa[t] him for any weapons that he may have come back with. We don't know. We're going into the unknown. We have to be prepared for anything. So I put him in handcuffs for officer safety.

Appellant told the officer that he wanted to set the record straight. Officer Rodriguez testified that for officer safety, Appellant was placed in handcuffs, patted down for weapons, and detained to allow the officers to evaluate the situation. He further testified that Appellant kept looking toward the complainant, "trying to make eye contact with her. . . . we [took] that as an intimidating factor."

- 12 -

Pursuant to standard office policy, Officer Rodriguez requested identification. When asked, Appellant identified himself as Juan Alberto Torres Landa. Officer Rodriguez asked for "proper ID" with a picture on it and Appellant told the officer it was in the wallet in his back pocket. He then "kind of reached over, bent over to give me the pocket." Officer Rodriguez clarified that Appellant "motioned for me to go ahead and take it out for him. I took it as, okay, it's right here."

Appellant proceeded to tell the officer his identification was in the wallet and directed the officer in which of the wallet's slots to look. Officer Rodriguez testified that he removed Appellant's identification bearing the name Juan Alberto Torres Landa. Additionally, Appellant pointed to his alien card and Mexican driver's license that both bore the same name. Officer Rodriguez testified that it was the Social Security card that caught his attention. The paper looked flimsy, the edges were tearing off, and on the left-hand corner, "you could see where drops of water or something was on the ink and it started to dry out and blur with a wet mark on there, [ ] Social Security cards don't do that." On cross-examination, Officer Rodriguez conceded that Appellant never said, "my Social Security card is right there, go ahead and look at it," and he never directly "offer[ed] his Social Security [card]" to the officer.

When Officer Rodriguez suspected the Social Security card was potentially fraudulent, he contacted the ICE office and provided the information from the alien card requested by the liaison officer. The agent reported that the number was a "good alien number but it's for someone from Vietnam." The Social Security card was registered to someone else from Vietnam that came to the United States to be a naturalized citizen. At that point, Appellant was placed under arrest for tampering with government documents, *Mirandized*, and placed in the back of the patrol car.

*2.      Criminal Investigator Damien Reyes*

Damien Reyes, a criminal investigator with the Office of the Inspector General in the United States Social Security Administration, was also called as a witness. Reyes confirmed that Social Security cards were issued by the government and that they were considered a government record. Reyes testified that on the day in question, Officer Rodriguez provided him with information regarding an individual who was potentially using a counterfeit Social Security card in his possession during the time of his arrest. Pursuant to the information provided by Officer Rodriguez, Reyes conducted a Social Security information query and determined that the number on the card did not match the name on the card. He further testified that using the card for identification was a misrepresentation. "[Use of the card] would be a misrepresentation of a valid Social Security card. In this case, this card is a counterfeit Social Security card." Reyes further explained that using another's card constitutes defrauding or victimizing the true number holder and could affect that individual in many ways, including tax and/or earning purposes. On cross-examination, Reyes confirmed that Alfaro-Jimenez had not applied for any Social Security benefits with the number on the card. Rodriguez further testified that he did not know if Alfaro-Jimenez used the card anywhere else in addition to presenting the counterfeit card to the officer.

*3.      Juan Pablo Alfaro-Jimenez*

Juan Pablo Alfaro-Jimenez testified that he moved to Arizona in 1999. Ten years later, he married and his daughter was born. He and his wife divorced; his ex-wife moved to Texas and Alfaro-Jimenez ultimately followed to be closer to his daughter.

Alfaro-Jimenez testified that on the day in question, he and the complainant in this case were no longer dating. They had been arguing on the telephone and he went to her apartment so they could work out their disagreement. He testified that he did not "knock on the door" because her children were there. She was talking to him through the window when she told him that she

was calling the police. He asserted the only thing he broke that day was his cell phone when he threw it on the sidewalk.

Alfaro-Jimenez contends that he left her apartment and proceeded to call the complainant from work. When she told him the officers were there, he left work "so [they could] talk in front of the police." But when he arrived, "they didn't let me talk at all at any moment. They handcuffed me. They took away my wallet. One of them threw me on the ground and he broke my glasses. They hurt my arm." Alfaro-Jimenez denied giving the officer permission to retrieve his wallet. He acknowledged telling the officer that his identification was in his wallet, but again denied giving the officer permission to reach into his pocket to retrieve the wallet.

When asked, Alfaro-Jimenez testified that, almost four years prior to the incident in question, he bought the Social Security card for $60.00 so that he could get a job. He claimed the individual from whom he bought the Social Security number made up both the number and the name on the card. He further testified that the only reason he ever used the card was to obtain work; he never used the Social Security card to apply for credit, open a bank account, or apply for Social Security benefits.

On cross-examination, Alfaro-Jimenez acknowledged that he was in possession of the Social Security card, that the name on the card was not his, and that he lied to Officer Rodriguez regarding his identification. Alfaro-Jimenez further conceded that he lied to his employers. He was adamant, however, that he never approached the complainant's door that afternoon and only wanted her to quit sending him messages. Finally, Alfaro-Jimenez acknowledged he told the officer that his identification was in his pocket.

**D.      Analysis**

Alfaro-Jimenez contends he was handcuffed when the officer searched through his wallet. After finding the requested identification, the officer continued to search through Alfaro-Jimenez's

wallet until he located the Social Security card in question. Alfaro-Jimenez argues the record does not support that he used or attempted to use the Social Security card.

The elements for tampering with a governmental record under penal code section 37.10(a)(2) are that (1) a person (2) makes, presents, or uses (3) any record, document, or thing (4) with knowledge of its falsity and (5) with intent that it be taken as a genuine governmental record. *See* TEX. PENAL CODE ANN. § 37.10(a)(2). In *Tottenham v. State*, 285 S.W.3d 19, 27–28 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd), the court explained "an offense is committed if a person 'makes, presents, or uses' a false record."

The testimony is uncontroverted that the Social Security card in question was counterfeit. Alfaro-Jimenez testified that he used the Social Security card to obtain work. *See Vasquez v. State*, No. 01-07-00666-CR, 2008 WL 2209526, at *6 (Tex. App.—Houston [1st Dist.] May 29, 2008, pet. ref'd) (mem. op., not designated for publication) (concluding that using a mechanic's lien foreclosure form to support his application for Texas certificate of title was making, presenting, or using a government record). "A Social Security card is a 'certificate issued by the United States,' and, therefore, it is a 'governmental record' as defined by Texas Penal Code section 37.01(2)(c)." *Lopez v. State*, 25 S.W.3d 926, 929 (Tex. App.—Houston [1st Dist.] 2000, no pet.).

It is solely within the jury's province "to weigh the evidence presented, evaluate the credibility of the witnesses and accept or reject the theories presented to it and we must defer to the jury's credibility and weight determinations." *Tottenham*, 285 S.W.3d at 28–29. Here, based on the circumstantial evidence, the jury could reasonably infer each of the elements of the offense beyond a reasonable doubt. *Id*. ("[B]oth intent and knowledge may be inferred from circumstantial evidence and proof of a culpable mental state almost invariably depends on circumstantial evidence."); *see also Dickey v. State*, No. 01-15-00835-CR, 2017 WL 1149215, at *4 (Tex. App.—

Houston [1st Dist.] Mar. 28, 2017, no pet.) (mem op., not designated for publication) ("Direct evidence of the requisite mental state is not required.").

Additionally, because the State sought to charge Alfaro-Jimenez with the second-degree felony offense of tampering with a governmental record, the State was required to additionally prove that the accused committed the offense "with the intent to defraud or harm another." *See* TEX. PENAL CODE ANN. §§ 37.10(c)(1). The testimony at trial focused on Alfaro-Jimenez's possession and use of the Social Security card as identification. Alfaro-Jimenez testified that he did not obtain any additional benefits or use the card for any purpose other than employment. We, therefore, conclude the jury could have reasonably concluded that during the commission of the offense, Alfaro-Jimenez used or presented the Social Security card, but that he did not intend "to defraud or harm another." *Tottenham*, 285 S.W.3d at 28. Additionally, because the jury concluded Alfaro-Jimenez did not intend to defraud or harm another, we conclude the trial court properly sentenced Alfaro-Jimenez's offense as a Class A misdemeanor. *See* TEX. PENAL CODE ANN. § 37.10(c) (classifying offense as Class A misdemeanor if no intent to defraud or harm another and document was not any of the following: public school records, reports or assessments; written medical, chemical, toxicological, ballistic, or other expert examination reports; certification, inspection, or maintenance records; search warrants, record used for enrollment of student; or written appraisal filed with an appraisal board).

Accordingly, we overrule Alfaro-Jimenez's appellate issues related to the sufficiency of the evidence.

## TEXAS PENAL CODE SECTION 37.10

In his final issue on appeal, Alfaro-Jimenez contends that Texas Penal Code section 37.10 is unconstitutionally vague. The State counters that Alfaro-Jimenez forfeited any alleged error by failing to raise the issue before the trial court. We agree with the State.

"A facial challenge to the constitutionality of a statute falls within [rights that can be forfeited].  Statutes are presumed to be constitutional until it is determined otherwise." *See Karene v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) (citing *Flores v. State*, 245 S.W.3d 432, 438 (Tex. Crim. App. 2008); *Doe v. State*, 112 S.W.3d 532, 539 (Tex. Crim. App. 2003)).  A review of the record does not include, and Alfaro-Jimenez has not pointed to any argument before the trial court that the statute was facially vague or vague as applied to him.  We, therefore, conclude that Alfaro-Jimenez waived his right to appeal any alleged facial challenge to the constitutionality of Texas Penal Code section 37.10.  *See id.*; *see also Sony v. State*, 307 S.W.3d 348, 353 (Tex. App.—San Antonio 2009, no pet.).

## CONCLUSION

Having overruled each of Alfaro-Jimenez's issue on appeal, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice

PUBLISH